## JENNESS *v.* JENNESS.

HUSBAND AND WIFE.—DOMICIL.—The general rule is that the domicil of the wife is determined by that of the husband. This rule results from the legal identity of husband and wife, constituting them one person in law, and from her duty to dwell with him. Page 357.

SAME.—JURISDICTION.—But where there has been a final separation of husband and wife, and they have their actual permanent residence in different states, the domicil of the husband cannot be regarded as fixing that of the wife, so as to confer, or oust, the jurisdiction in a suit for divorce. Page 358.

Jenness *v.* Jenness.

SAME.—CROSS-PETITION.—It is not necessary, under our statute, that the defendant, in an action for divorce, should be a resident of this State, in order to file his cross petition, and obtain the affirmative relief which it may authorize.

APPEAL from the *Miami* Circuit Court.

FRAZER, J.—The appellant filed his petition against the appellee, his wife, for divorce. The wife answered, and also filed a cross-petition, praying a divorce in her own behalf, and thereupon the appellant dismissed his petition, and answered the cross-petition by a general denial. Upon trial, the court found the facts specially, and its conclusions of law thereon, and decreed a divorce to the wife, with $800 dollars as alimony. The husband appeals. The special findings, so far as need be set forth to exhibit the questions before us, are as follows :

That the parties were lawfully married some eighteen or twenty years ago; that they have never had a child; that the wife has, for most of the time since her marriage, been an invalid; that the plaintiff was guilty of mistreating her, as charged in the cross-petition, and that she is entitled to a divorce and $800 alimony; that she resolved three years ago last fall, to part from him, and go to live with her father and brother, in the State of *Pennsylvania*, and accordingly left at that time with her father, and has been living ever since with her father and brother, in that state, without any intention of returning to this state to reside here ; that she never did return, except to defend this suit, last fall, and at the present time, and to prosecute her cross-petition, and intends to return to that state on the conclusion of the present trial, and the conclusions of law upon these facts are :

1. That the court has jurisdiction to try and determine the cross-petition, by reason of having acquired jurisdiction to try the petition of the plaintiff, and that the dismissal of that petition does not oust that jurisdiction, and that it was not necessary for the wife to allege or prove that she

was a *bona fide* resident of the state for one year previous to filing said cross petition.

2. That if it were necessary, the wife has not lost her domicil in *Miami* county, *Indiana*, by reason of her residence in *Pennsylvania*, and is to be deemed and taken as a resident of the same county with her husband, (because of his domicil here,) and for the purposes of this suit.

Proper exceptions to the conclusions of law of the court below, present two questions for our determination.

1. In case of final separation of husband and wife, and their actual permanent residence in different states, is the domicil of the husband to be regarded as fixing that of the wife, so as to confer jurisdiction in a divorce case?

In the view we entertain of the case before us, this question is not now important. But it is in the record, and has been argued by counsel, and it is probably our duty now to decide it.

The general rule undoubtedly is that the domicil of the wife is determined by that of her husband. This rule results from the legal identity of husband and wife, constituting them one person in law, and from her duty to dwell with him. But it is argued, on behalf of the appellant, that the identity of domicil is a presumption which may be rebutted in a divorce case; that any act of the husband which entitles the wife to a divorce, immediately discharges her from any obligation to dwell with him; that, in such a case, she *must* separate from him to preserve her legal rights, or the cohabitation will be a condonation of the act; and that when the duty of dwelling together ceases, the presumption must also cease.

There is much force in this argument, and it is not without direct authority to support it. In *Schonwald* v. *Schonwald*, 2 Jones Eq. R. (N. C.) 367, it was held that "the maxim that the domicil of the wife follows that of the husband cannot be applied to give jurisdiction." And it was decided that, at any rate, the statute of *North*

*Carolina*, requiring three years residence there before a party could sue for divorce, meant actual residence; a living there in fact; that any other construction would defeat the purpose of the statute, which was to prevent the residents of other states from obtaining, in the courts of that state, divorces when they could not obtain them at home. But precisely the contrary doctrine has been held in *Massachusetts*. In *Greene* v. *Greene*, 11 Pick. 410, the husband, while residing in *Rhode Island*, abandoned his wife, and removed to *Massachusetts*, she continuing for five years to reside in *Rhode Island*, when she went to the county of his domicil in *Massachusetts*, and immediately sued for a divorce *a mensa et thoro*. The statute required a residence in *Massachusetts* to give jurisdiction. The jurisdiction was sustained, upon the ground that the domicil of the husband, as a matter of law, determines that of the wife. But in *Harteau* v. *Harteau*, 14 Pick. 181, the wife, after being deserted by her husband in *New York*, returned to her former home in *Massachusetts* to live, and afterward filed her libel there for divorce, the husband still retaining his domicil in *New York*. A decree was refused for want of jurisdiction, upon other grounds, but it was ruled that the maxim, "that the domicil of the wife follows that of the husband," cannot be applied in such a case to oust the court of jurisdiction; that the law will recognize the wife as having a separate existence, separate interests, and separate rights, in those cases where the object of the proceedings is to show that the marriage relation itself ought to be dissolved; otherwise the parties would stand on very unequal grounds, as the husband could change his own domicil at will, and thus, in many cases, deprive the wife of all opportunity of enforcing her rights. In full accord with this doctrine is the case, in our own state, decided at an earlier date, of *Tolen* v. *Tolen*, 2 Blackf. 407. In that case, the parties resided in *Kentucky* when the cause of divorce arose. The wife afterward removed to this state, *animo manendi*, and brought her suit for divorce,

the husband never having resided here; and it was held that the court had jurisdiction. The doctrine of that case has been universally adopted in practice here ever since, and it must be considered settled. It is a denial of the most essential municipal authority, to say that a state has no jurisdiction to determine, according to its laws, the social *status* of the people residing, in good faith, within it; and in doing so, it may, perhaps, incidentally affect that of people dwelling in other states. There is no principle upon which the two *Massachusetts* cases above mentioned can be reconciled, unless it be that the wife, for the purposes of such a suit, may have two domicils in separate states, either of which gives jurisdiction. With great respect for a court always ranking among the very first for the profound learning and high character of judges composing it, we cannot assent to this proposition. Under a statute like ours, especially, which requires a *bona fide* residence here for a given time to confer jurisdiction in the first instance, we must forget the purpose of the statute itself, and the just limits which the universally recognized principles of public law impose upon every state, in exercising the power of regulating the domestic relations, before we can be prepared to hold that one who never dwelt here, is at liberty to appeal to our court as a plaintiff seeking divorce. To do so would be to substitute a constructive residence for that actual *bona fide* dwelling here, *animo manendi*, which it was the purpose of our legislature to require.

2. The remaining question depends upon the construction to be given to our statute of divorces. It is, whether upon cross-petition by a non-resident, our courts have jurisdiction to grant divorce, where the original cause was within the jurisdiction?

Section 6 of our divorce act provides that "divorces may be decreed," &c., "on petition filed by any person who, at the time," &c., "shall have been a *bona fide* resident of the state one year previous to the filing of the same, and a

*bona fide* resident of the county at the time of filing such petition." By the eleventh section a mode is provided for giving notice to the defendant when not a resident of this state, and by section 14 it is enacted that, "in addition to an answer, the defendant may file a cross-petition for divorce, and when filed, the court shall decree the divorce to the party legally entitled to the same. If the original petition be dismissed after the filing of a cross-petition, the defendant may proceed to the trial of the cross-petition, without further notice to the adverse party." These provisions must be construed together, and if it can reasonably be done, full effect must be given to each of them.

A brief review of our recent legislation concerning divorces may aid us. In 1852, we permitted any resident of the county to apply to our courts, in that county, for a divorce, and his own affidavit of such residence was made, *prima facie*, sufficient evidence of it. Under that act, such monstrous abuses were practiced, to the injury of unsuspecting husbands and wives, in other states, that our statute became a reproach to us abroad. The mischief was, not that parties residing elsewhere came to the domicils of their husbands or wives here, and, in response to their applications for divorce, obtained decrees on their own behalf, on cross-petitions filed. Quite otherwise. It was that persons from other states, leaving home upon pretended visits of business or pleasure, never intending to domicil here, and, in many cases, not remaining a day among us, and sometimes not even entering our borders at all, had, by the barest frauds and perjuries, procured divorces in our courts. As the fourteenth section then stood, the dismissal of the petition carried the cross-petition with it, and enabled a plaintiff, who must be defeated by the resident or non-resident defendant upon cross-petition, by dismissing his petition as often as a cross-petition was filed, to annoy and perhaps exhaust the defendant so that finally no defense would be made. In a

case like the one before us, where the defendant is a wife residing in a distant state, it is easy to see that this consequence might easily be, and how non-resident defendants might be outraged. The protection of the rights of the people of other states, and a regard for the good name of our own state abroad, demanded imperatively that both sections 6 and 14 should be amended so as to shut the door against these mischiefs and abuses; and, accordingly, they were amended in 1859, and put in the form which we have copied in a preceding part of this opinion. It is due to our character as a state to say that this remedial legislation has put an effectual check upon the pre-existing state of affairs, and that it is believed that the judges of our *nisi prius* courts, by being careful to require proof of the facts which give jurisdiction, and our prosecuting attorneys, by vigilance in opposing divorces, as the law requires, whenever the defendant makes default, are quite as successful in preventing the fraudulent practices of which we have spoken, as are the tribunals of most of our sister states. If these continue, they will be chargeable, not to our laws, but to those who are intrusted with their administration.

It must be quite apparent that to hold the requirement of a year's residence applicable to defendants, as well as petitioners, is not only to give section 6 a construction not required by its language, but also to make it conflict with the general terms of section 14. Nor is this all. A consequence would be, that in two cases precisely alike in their facts, the defendant in one being a resident, and in the other a non-resident, the former might result in a decree for divorce on cross-petition, with such alimony as ought to be given where the plaintiff is in fault; while in the latter, that vindication of character which can often be secured only by a decree, could not be had by the defendant, nor could the alimony be adjusted upon the basis of the fact that the defendant was the party

aggrieved. Such a discrimination against non-resident defendants finds no place within the letter of the statute, still less in its spirit, and a construction which would allow it, would invite, in the class of cases in which they could be most successfully perpetrated, the very worst abuses, which the amendment of section 14 was intended to prevent.

So far as the decree affects the *status* of the plaintiff, who is a resident, and imposes upon him a pecuniary liability for the alimony allowed, which will be effective here, we suppose there can be no doubt that it was competent for an *Indiana* court to go, if it proceeded according to our laws. Whether the courts of *Pennsylvania* will regard the social condition of the defendant as having been changed, is not a question for us. It is to be regretted, however, that questions of that class have not been always dealt with upon general principles of public law, rather than maxims of local policy.

Upon the question in hand, we concur with the learned judge below, in his conclusion of law, "that the Circuit Court had jurisdiction to try and determine the cross-petition," &c., "and that it was not necessary for the defendant to prove that she was a *bona fide* resident of this state for one year previous to filing said cross-petition."

Thus, while our statute is intended to prevent non-residents from making use of our courts to perpetrate frauds upon their unsuspecting wives or husbands, by coming here to petition for divorces, it, at the same time, arms them with every weapon of defense which is afforded to our own people, when brought into court at the suit of those whose *bona fide* residence here gives us jurisdiction. As we construe the statute, section 14 is the complement of section 6, and both together are well calculated to protect non-residents, prevent abuses, and promote the enlightened administration of justice in divorce cases.

The judgment is affirmed, with 1 per cent. damages and costs.

*D. D. Pratt* and *D. P. Baldwin,* for appellant.

*Dickey* and *Blake,* for appellee.