LESLIE A. CAFFYN *vs.* BRIAN E. CAFFYN.

Norfolk. February 5, 2004. - April 20, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Divorce and Separation,* Jurisdiction, No-fault divorce. *Jurisdiction,* Divorce proceedings. *Domicil. Statute,* Construction.

This court concluded that a plaintiff in a divorce action who had not complied with the one-year residency requirement of G. L. c. 208, § 5, neverthelesss could satisfy the alternative jurisdictional requirements of § 5 by asserting domicil after a brief period of residence and claiming that the "cause" for the divorce, namely "an irretrievable breakdown of the marriage" under G. L. c. 208, § 1B, occurred within Massachusetts. [490-498]

COMPLAINT for divorce filed in the Norfolk Division of the Probate and Family Court Department on October 15, 2002.

A motion to dismiss was heard by *David H. Kopelman,* J.

A proceeding for interlocutory review was heard in the Appeals Court by *Fernande R.V. Duffly,* J. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David H. Lee* (*Robert J. Rivers, Jr.,* with him) for Brian E. Caffyn.

*Paul M. Kane* (*Courtney Vore* with him) for Leslie A. Caffyn.

IRELAND, J. This case raises the first impression question whether a plaintiff in a divorce action who has not complied with the one-year residency requirement of G. L. c. 208, § 5, may, nevertheless, satisfy the alternative jurisdictional requirements of § 5, by asserting domicil after a brief period of residence and claiming that the "cause" for the divorce, namely "an irretrievable breakdown of the marriage" under G. L. c. 208, § 1B, occurred in Massachusetts. Brian E. Caffyn (husband) appeals from an order of the Probate and Family Court denying his motion to dismiss a complaint for divorce filed by Leslie A. Caffyn (wife) based on lack of subject matter jurisdiction. After

a single justice of the Appeals Court entered an order granting the husband leave to file an interlocutory appeal "as to the issue of subject matter jurisdiction," we transferred the case on our own motion. Because we conclude that a plaintiff domiciled in Massachusetts may satisfy the jurisdictional requirements of § 5 by making a subjective determination that the marriage became irretrievably broken (pursuant to § 1B) within the Commonwealth, we affirm the Probate and Family Court's denial of the husband's motion to dismiss.

*Facts.*

The parties were married in Brookline, Massachusetts, on May 30, 1987. After the marriage, the parties resided in Stamford, Connecticut, for approximately one year. Between 1988 and 1990, the husband and the wife lived in Massachusetts for approximately one and one-half years. The parties then moved to Chicago, Illinois, where they resided for approximately six years and where their two children were born. Thereafter, the family relocated to San Diego, California, where they lived for approximately one and one-half years. In approximately 1996 or 1997, the parties and their children moved to Italy, where they resided as a family through the end of June, 2002, when the wife moved to Massachusetts with the children.

Throughout the marriage, the husband and the wife maintained a joint bank account in Massachusetts. The parties also retained pediatricians for their children and came to Massachusetts twice a year for the children to be seen by "their" doctors. The wife alleges (and the husband does not dispute) that each year, the family spent Christmas holidays and a portion of summer vacations in Massachusetts.

Before leaving Italy, the wife arranged for the family's personal belongings to be shipped to Massachusetts, discharged hired help, canceled the children's tutors and therapist, and caused the children's educational records to be sent to Massachusetts. After moving to Massachusetts in June of 2002, the wife opened a bank account in her own name. In late August of 2002, the wife and the husband purchased a residence in Wellesley, with title taken jointly in both their names. They jointly investigated private schools in Massachusetts for the children. The husband purchased, and the wife registered, a

vehicle in Massachusetts for the use of the wife and the children. The husband also visited the children in Norwood, where they resided temporarily with their mother and grandparents.[1]

*Procedural background.*

The wife filed a complaint for divorce in the Norfolk County Probate and Family Court on June 28, 2002. Due to procedural flaws, however, that complaint was dismissed. The wife filed a second, essentially identical, complaint on October 15, 2002, in which she sought, inter alia, a dissolution of the marriage pursuant to G. L. c. 208, § 1B,[2] and alleged that "an irretrievable breakdown of the marriage" occurred on or about June 26, 2002, within the Commonwealth.[3]

The husband's counsel filed a special appearance and a motion, pursuant to Mass. R. Dom. Rel. P. 12 (b),[4] to dismiss the wife's complaint for divorce due to lack of subject matter and personal jurisdiction, insufficient service of process, and failure to state a claim on which relief can be granted.[5] The husband also submitted an affidavit disputing the validity of service of

[1]The wife was born in Massachusetts. Her parents are lifelong residents of the Commonwealth.

[2]General Laws c. 208, § 1B, along with G. L. c. 208, § 1A, comprise the two Massachusetts "no fault" divorce statutes. Section 1A permits both parties jointly to petition the court for a divorce on the ground of "an irretrievable breakdown of the marriage"; a judgment of divorce nisi is entered thirty days after the hearing. The judgment of divorce absolute is entered ninety days after that. See G. L. c. 208, § 21 ("Judgments of divorce shall in the first instance be judgments nisi, and shall become absolute after the expiration of ninety days from the entry thereof . . .").

Section 1B permits a party to file a complaint for divorce. It further provides that "[n]o earlier than six months after the filing of the complaint, there shall be a hearing and the court may enter a judgment of divorce nisi if the court finds that there has existed, for the period following the filing of the complaint and up to the date of the hearing, a continuing irretrievable breakdown of the marriage." G. L. c. 208, § 1B. The judgment of divorce absolute is entered ninety days later.

[3]On the same day, October 15, 2002, the husband was served with a copy of the complaint, in hand, while visiting the parties' minor children in Massachusetts.

[4]Rule 12 (b) of the Massachusetts Rules of Domestic Relations Procedure (2004) is identical to Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974).

[5]The husband also raised the Hague Convention on the Civil Aspects of International Child Abduction. At the hearing on his motion to dismiss, the husband's attorney stated that within several days of the hearing, the husband was planning to file a complaint with the Federal District Court for the District

process, which was countered by the process server's affidavit. The wife filed an opposition to the motion. A judge in the Probate and Family Court issued a memorandum of decision and order denying the husband's motion. The husband filed a petition pursuant to G. L. c. 231, § 118, first par., requesting leave to take an interlocutory appeal from the denial. A single justice of the Appeals Court entered an order granting the husband leave to file an interlocutory appeal "as to the issue of subject matter jurisdiction." We transferred this case from the Appeals Court on our own motion.

*Discussion.*

1. *Standard of review.* The focus of appellate review of an interlocutory matter is "whether the trial court abused its discretion — that is, whether the court applied proper legal standards and whether the record discloses reasonable support for its evaluation of factual questions." *Edwin R. Sage Co.* v. *Foley,* 12 Mass. App. Ct. 20, 25 (1981). The judge's "conclusions of law are subject to broad review and will be reversed if incorrect." *Id.* at 26.

2. *Subject matter jurisdiction under G. L. c. 208, § 5.* This case presents us with the question of the meaning of "an irretrievable breakdown of the marriage"[6] (the so-called "no-fault" divorce provisions under G. L. c. 208, §§ 1A and 1B[7]) as a "cause" for divorce in the context of interpreting G. L. c. 208, § 5, one of the statutes conferring subject matter jurisdiction on the Probate and Family Court Department.[8] Section 5 provides:

---

of Massachusetts under the Hague Convention. The Hague Convention issue is not before us on appeal.

[6]The statute itself does not specify what constitutes "an irretrievable breakdown of the marriage." See G. L. c. 208. The term has been defined as meaning that either or both spouses are unable or unwilling to cohabit and there are no prospects for reconciliation. C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice § 33:9 (3d ed. 2002), citing Black's Law Dictionary 830 (6th ed. 1990).

[7]See note 2, *supra.*

[8]The other jurisdictional statute, G. L. c. 208, § 4, provides:

"A divorce shall not, except as provided in the following section, be adjudged if the parties have never lived together as husband and wife in this commonwealth; nor for a cause which occurred in another jurisdiction, unless before such cause occurred the parties had lived together as

"If the plaintiff has lived in this commonwealth for one year last preceding the commencement of the action if the cause occurred without the commonwealth, or if the plaintiff is domiciled within the commonwealth at the time of the commencement of the action and the cause occurred within the commonwealth, a divorce may be adjudged for any cause allowed by law, unless it appears that the plaintiff has removed into this commonwealth for the purpose of obtaining a divorce."

Specifically, we must decide whether a spouse who has not complied with a statutory one-year residency requirement may satisfy the jurisdictional requirements of § 5 by asserting domicil after a brief period of residence and claiming that the "cause" for the divorce, namely "an irretrievable breakdown of the marriage," "occurred within" Massachusetts.[9]

a. *Burden of proof.* Because the husband filed a motion to dismiss due to lack of subject matter jurisdiction under Mass. R. Dom. Rel. P. 12 (b) (1), the burden fell on the wife to prove jurisdictional facts. *Williams* v. *Episcopal Diocese of Mass.*, 436 Mass. 574, 577 n.2 (2002), and cases cited. See *Brown* v. *Tobyne*, 9 Mass. App. Ct. 897 (1980).

At the time she filed the complaint for divorce, the wife had not yet satisfied the one-year residency requirement, and thus could not establish jurisdiction on that prong of § 5.[10] Therefore, to establish subject matter jurisdiction under the alternative prong of § 5, the wife had to prove that she was domiciled in Massachusetts when she filed the complaint, that the "cause"

husband and wife in this commonwealth, and one of them lived in this commonwealth at the time when the cause occurred."

Because we conclude that subject matter jurisdiction over this action exists under § 5, we need not decide whether it also exists under § 4.

[9]The wife asserts that she has been domiciled in Massachusetts since June of 2002, and that her subjective assertion that the marriage became irretrievably broken on or about June 26, 2002, is not only sufficient to confer subject matter jurisdiction, but also comports with the intent of the Legislature in enacting G. L. c. 208, §§ 1A and 1B, the so-called "no fault" divorce statutes.

[10]Although the wife has now fulfilled the one-year residency requirement, and presumably may now file a proper divorce complaint under § 5 even if the "cause" for divorce did not occur in Massachusetts, we nevertheless shall proceed to a decision because of the importance and recurring nature of the issue presented. See *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 782-783 (1984).

for divorce "occurred within" Massachusetts, and that she had not "removed into" Massachusetts to obtain a divorce.

b. *Domicil.* Domicil has been defined as "the place of one's actual residence with intention to remain permanently or for an indefinite time and without any certain purpose to return to a former place of abode." *Fiorentino* v. *Probate Court*, 365 Mass. 13, 17 n.7 (1974), quoting *Tuells* v. *Flint*, 283 Mass. 106, 109 (1933). Whether a person has established a domicil in a State is a question of fact for the trial judge. See *id.* at 21-22. The judge can make "a reasonably accurate determination" of the plaintiff's claim of Massachusetts domicil based on numerous factors, including, without limitation, whether the plaintiff has "a Massachusetts driver's license and automobile registration; whether he or she has purchased a home or has leased an apartment in the Commonwealth; . . . whether any children have been brought to live in Massachusetts; whether personal property, including household goods, has been brought here; . . . whether there is evidence of abandonment of previous domicil, e.g., cancellation of bank accounts, leases, memberships, and so forth, sale of property, and issuance of change of address notices." *Fiorentino* v. *Probate Court, supra* at 22 & n.12.[11] The length of residence in the State is "one, but only one, relevant consideration" in determining domicil. *Id.* at 22. See *Kennedy* v. *Simmons*, 308 Mass. 431, 434-435 (1941) (domicil established in Massachusetts where person intended to remain permanently but died in hospital one week after arriving in Massachusetts from Florida); *Winans* v. *Winans*, 205 Mass. 388, 391-392 (1910) (domicil established in Massachusetts even though person had stayed in Massachusetts for less than two weeks living in hotel while looking for more permanent accommodations).

---

[11]The husband's contention that the definition of domicil "is clearly a rather elusive relationship between person and place" is without merit. We have stated before, and now reiterate: "[W]e do not believe that . . . fraudulent claims of domicil can be perpetrated so effectively as to defy detection by judges who act affirmatively to prevent such fraud." *Fiorentino* v. *Probate Court*, 365 Mass. 13, 21 (1974). There exist "a myriad of tangible [objective] criteria" that are "highly relevant" to the determination of domicil. *Id.* at 22, quoting *Mon Chi Heung Au* v. *Lum*, 360 F. Supp. 219, 222 (D. Haw. 1973).

The facts of this case amply support the judge's conclusion that the wife established domicil in the Commonwealth. The husband's actions, such as joining in the purchase of a residence in Massachusetts, paying for the children's private schooling in the Commonwealth, purchasing a motor vehicle for the wife's use and registering the vehicle in Massachusetts, strengthen, rather than contradict, the wife's allegations of domicil. Furthermore, we are of the opinion that the evidence supports the judge's finding that the wife had not "removed into" Massachusetts for the purpose of obtaining a divorce. See *Lycurgus* v. *Lycurgus*, 356 Mass. 538, 540-541 (1969).

c. *"An irretrievable breakdown of the marriage" as "cause" for divorce under § 5.* The subject matter jurisdiction statutes were enacted long before the no-fault divorce statutes, and the term "cause" referred, at first, only to the fault grounds that had to be proved to obtain a divorce.[12] In 1975, the Legislature added "an irretrievable breakdown of the marriage" as a ground for divorce. St. 1975, c. 698, amending G. L. c. 208, § 1, and inserting G. L. c. 208, §§ 1A and 1B, effective January 1, 1976. It never saw fit, however, to rewrite the statute to accommodate the new concept of "an irretrievable breakdown of the marriage" within the jurisdictional scheme that was premised on being able to determine, with a reasonable degree of certainty, where the "cause" for divorce occurred.

We now examine the language of § 5.[13] Section 5 does not distinguish between fault and no-fault grounds for divorce. It provides that "a divorce may be adjudged for any cause al-

---

[12]In 1975, the year in which it enacted the no-fault statutes, the Legislature amended both subject matter jurisdiction statutes to conform to the Massachusetts Rules of Civil Procedure, and it further amended G. L. c. 208, § 5, to reduce from two years to one year the time that a plaintiff was required to live in Massachusetts before filing for divorce. See St. 1975, c. 400, §§ 9, 10. Since then, the Legislature has amended G. L. c. 208, § 1A, twice, reducing the waiting period for obtaining a divorce nisi from ten months to six months to thirty days. See St. 1977, c. 531, § 2; St. 1986, c. 189. The Legislature also has amended G. L. c. 208, § 1B, twice to reduce the waiting period for obtaining a hearing on the complaint from twenty-four months to twelve months to six months. See St. 1977, c. 531, § 1; St. 1985, c. 691, § 2.

[13]The parties have not supplied, and we have not been able to locate, any legislative history that would aid us in discerning the legislative intent of that section.

lowed by law," which logically includes "an irretrievable breakdown of the marriage" under the no-fault provisions, §§ 1A and 1B. See C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice § 27:3 n.6 (3d ed. 2002) (grounds for divorce are set forth in G. L. c. 208, §§ 1, 1A, 1B, and 2). Neither § 1A nor § 1B contains a requirement that a spouse plead or enumerate any objective factors that would lead a court to the conclusion that a marriage is irretrievably broken.[14] In light of the foregoing, we reject the husband's contention that § 5, properly interpreted in the context of §§ 1A and 1B, requires "the occurrence of an objective factual event in Massachusetts which gives rise to the cause of the divorce."[15] As a "cause" for divorce, "an irretrievable breakdown of the marriage" is inherently subjective and, contrary to the husband's contention, need not be "objectively documented, tested and proven."[16] The decision that a marriage is irretrievably broken need not be

---

[14]In contrast, a plaintiff seeking a divorce on fault grounds must plead and prove objective acts as to fault. See G. L. c. 208, § 1.

[15]The cases cited by the husband in support of this position are either Massachusetts cases decided prior to the enactment of the no-fault divorce statutes, or cases from other jurisdictions, distinguishable from this case on their facts.

[16]An analysis of California's no-fault divorce statute, Cal. Fam. Code § 2310 (West 1994) (formerly Cal. Civ. Code § 4506), is instructive. Comment, The End of Innocence: Elimination of Fault in California Divorce Law, 17 UCLA L. Rev. 1306, 1319, 1322-1323 (1970) ("irreconcilable differences which have caused the irremediable breakdown of the marriage" is fundamentally subjective unilateral standard). According to the author, "irreconcilable differences" need not "exist in the form of observable acts and occurrences such as marital quarrels or separation of the parties." Id. at 1319. Rather, the term "irreconcilable differences" is "descriptive of the frame of mind of the spouses in a marriage which is no longer viable." Id., quoting The Report of the Assembly Committee on the Judiciary, in J. of the Cal. Assembly at 8057 (Aug. 8, 1969). To satisfy the "irreconcilable differences" test, it is sufficient if only one spouse feels "that the marriage cannot be salvaged." Comment, supra.

The California no-fault divorce statute does not explicitly state whether a "petitioner's self-serving testimony about his or her state of mind" is sufficient evidence to establish irreconcilable differences, or whether it must be "corroborated by evidence of actual facts and occurrences." Id. at 1320. Reading the statutory provisions regarding "irreconcilable differences" together with the provisions generally prohibiting receipt of fault evidence in divorce cases brought on no-fault grounds, it becomes clear that "demonstrative evidence is not required to corroborate state-of-mind testimony" and "the prima facie case for dissolution should be satisfied by the declaration of petitioner that he or she sincerely believes that the marriage has irreparably

based on any identifiable objective fact; it is sufficient that a party or parties subjectively decide that their marriage is over and there is no hope of reconciliation.[17] In adopting no-fault divorce, the Legislature implicitly recognized that the parties to a marriage should be able to make personal and unavoidably subjective "decisions about marriage and divorce free from overwhelming state control."[18] See Developments in the Law

broken down." *Id.* at 1321, 1322. See *id.* at 1324 (irreconcilable differences is "proved solely with reference to petitioner's state of mind"). Similar to the California no-fault divorce statute, G. L. c. 208, § 34, also prohibits a judge "from inquiring into or considering any evidence of individual marital fault of the parties" in determining whether the parties' separation agreement in § 1A divorces is fair and reasonable. See Freedman, Irretrievable Breakdown of the Marriage: An Additional Ground for Divorce, 20 B.B.J. 3, 5 (No. 1 1976).

[17]Our conclusion finds support in the reasoning of other courts. See, e.g., *In re Marriage of Walton,* 28 Cal. App. 3d 108, 117 (1972), quoting *In re Marriage of McKim,* 6 Cal. 3d 673, 680 (1971) (in deciding whether evidence supports findings "that irreconcilable differences do exist and that the marriage has broken down irremediably and should be dissolved," the court must necessarily "depend to a considerable extent upon the subjective state of mind of the parties"); *Joy* v. *Joy,* 178 Conn. 254, 255 (1979) (there need not be "objective guidelines" for determination that marriage is irretrievably broken); *Mattson* v. *Mattson,* 376 A.2d 473, 475 (Me. 1977) ("The term 'irreconcilable marital differences' is one that necessarily lacks precision and should not be circumscribed by a strict definition"); *Matter of the Marriage of Dunn,* 13 Or. App. 497, 501-502 n.1 (1973) (explaining necessity of subjective standard of marital failure in context of no-fault divorce).

[18]See Wardle, No-Fault Divorce and the Divorce Conundrum, 1991 BYU L. Rev. 79, 83-91 (1991). A "review of legal literature advocating or discussing the adoption of no-fault divorce grounds in the 1960s and 1970s," *id.* at 91, revealed that one of the major arguments in favor of adopting no-fault divorce grounds was that basic notions of marriage and divorce had changed, and "no-fault divorce more accurately reflected modern conceptions of terminating marital relations than did the prior laws." *Id.* at 95. Specifically, the advocates of no-fault divorce asserted that "divorce was a private matter that the state had no legitimate interest to restrict when the marriage was irretrievably broken and the parties to the marriage had agreed to terminate the marriage." *Id.* at 96. The main thrust of this privacy argument was to protect the parties from "unnecessary distress and embarrassing public disclosures." *Id.* The proponents of no-fault divorce claimed that requiring the parties to disclose " 'the most intimate and often embarrassing details of marital life' [was] 'abhorrent to the community,' violated the spirit of family privacy, and worked only to 'demean the marriage relationship, humiliate the parties, and damage the residual family relationships.' " *Id.* at 96, quoting Goldstein, On Abolition of Grounds for Divorce: A Model Statute and Commentary, 3 Fam. L.Q. 75, 82-83 (1969). The shift to the no-fault divorce was, thus, prompted in part by the belief that "[t]he state's interest in protecting marriages did not

— The Law of Marriage and Family, 116 Harv. L. Rev. 2075, 2089 (2003), quoting E.S. Scott & R.E. Scott, A Contract Theory of Marriage, in The Fall and Rise of Freedom of Contract 201, 204 (F.H. Buckley ed., 1999) (no-fault divorce "is the hallmark of the law's retreat from regulating marriage").

The husband argues that the wife's claim that the marriage suffered "an irretrievable breakdown in Massachusetts" is based entirely on an "ethereal" event. We disagree. There is support for the wife's assertion that the marriage became irretrievably broken in Massachusetts. In his memorandum of law in support of the motion to dismiss the wife's divorce action, the husband admitted that the parties attempted reconciliation in Massachusetts during the summer of 2002.[19] By September of 2002, however, the parties' reconciliation attempts failed. The reconciliation having failed, the "irretrievable breakdown" that the wife alleged occurred on or about July 26, 2002, continued as set forth by the wife in her second complaint for divorce.[20]

---

justify requiring disclosure of the marriage's failings if it was undisputed by the parties that the marriage was irretrievably broken." Wardle, *supra* at 96.

No-fault divorce laws represent a "cultural rise of individual liberty within the family" and "allow the parties involved to assess the viability of the marriage." Note, Who Pays for Guilt?: Recent Fault-Based Divorce Reform Proposals, Cultural Stereotypes and Economic Consequences, 40 B.C. L. Rev. 611, 614 (1999). Judges, thus, "do not contest the viability of a marriage." *Id.*

[19]The husband's memorandum of law reads, in pertinent part:

"In the late summer of 2002, [the wife] reported to [the husband] that she would be amenable to a reconciliation. The terms of such reconciliation, however, were conditioned upon [the husband's] agreeing to assist [the wife] with the purchase of a temporary residence in the Boston area while she assessed the prospect of resuming living together. In specific reliance on [the wife's] overtures with respect to reconciliation, and in an effort to save the marriage, [the husband] agreed to assist [the wife] with the purchase of a home in Wellesley in late August/early September, 2002."

[20]The fact that the wife moved to Massachusetts, while the husband remained in Italy, does not, by itself, establish that the parties' marriage had already become irretrievably broken in Italy. Many married couples do not reside together, or temporarily occupy residences in separate locations, for employment or other reasons. It would defy common experience to conclude from this fact alone that their marriages must have broken down prior to the time they took up separate residences.

In addition, contrary to the husband's argument, subject matter jurisdiction under § 5 would not be based solely on a spouse's subjective determination of when and where his or her marriage suffered "an irretrievable breakdown." The Legislature has set forth additional safeguards designed to prevent the Commonwealth from becoming a "divorce mill for unhappy spouses," *Sosna* v. *Iowa*, 419 U.S. 393, 407 (1975): the requirements that a plaintiff establish domicil in the State (an objective determination, discussed *supra*)[21] and convince the court that he or she had not "removed into" Massachusetts solely to obtain a divorce, and a six-month waiting period before a hearing on a divorce complaint filed pursuant to § 1B can be obtained.[22] The Legislature easily could have limited the invocation of § 5 to parties filing for divorce on fault grounds, or imposed a mandatory residency requirement on all spouses alleging "an irretrievable breakdown of the marriage," but it did not do so. That the Legislature did not impose any additional restrictions on plaintiffs seeking no-fault divorces lends support to our conclusion that it considered existing safeguards sufficient to prevent potential forum shopping abuses.

*Conclusion.*

For the foregoing reasons, we conclude that the judge did not abuse his discretion in concluding that the wife satisfied the jurisdictional requirements of G. L. c. 208, § 5, so as to survive the husband's motion to dismiss based on lack of subject matter jurisdiction. Accordingly, we affirm the Probate and Family

[21]As we noted in *Fiorentino* v. *Probate Court*, 365 Mass. 13, 17 (1974), "State courts [constitutionally] may exercise divorce jurisdiction based solely" on the domicil of the plaintiff, even if the defendant "neither appears nor is personally served and even though the parties never resided as husband and wife in the forum State." See C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice § 8:4, at 297 (3d ed. 2002) ("Divorce subject matter jurisdiction in the United States is generally . . . based on the domicile of at least one of the parties . . .").

[22]These "statutory restrictions on the divorce powers of Massachusetts courts were presumably intended to prevent the bringing of migratory causes of action in Massachusetts" and limit divorce proceedings to "situations where the Commonwealth has some substantial connection with the dispute being adjudicated." *Fiorentino* v. *Probate Court*, *supra* at 17. We conclude that the trial judge did not abuse his discretion in concluding that this case is neither a migratory cause of action nor a situation where the Commonwealth does not have a substantial connection with the dispute.

Court's denial of the husband's motion to dismiss the wife's complaint for divorce.

*So ordered.*