NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-59                                        Appeals Court

    RHITU SIDDHARTH ROSE  vs.  ALEXANDER STEPHANE GERARD ROSE.

                         No. 18-P-59.

        Norfolk.     May 15, 2019. - November 20, 2019.

             Present:  Rubin, Desmond, & Ditkoff, JJ.


Divorce and Separation, Jurisdiction.  Jurisdiction, Divorce
     proceedings, Nonresident.  Domicil.



     Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on May 30, 2017.

     A motion to dismiss was heard by Virginia M. Ward, J.


     Robert Herrick for the wife.
     Mikalen E. Howe for the husband.


     DESMOND, J.  Where parties to a divorce action have never

lived together as spouses in Massachusetts,[1] a divorce may not be

_____

     [1] "A divorce shall not, except as provided in the following
section, be adjudged if the parties have never lived together as
husband and wife in this [C]ommonwealth; nor for a cause which
occurred in another jurisdiction, unless before such cause
occurred the parties had lived together as husband and wife in
this [C]ommonwealth, and one of them lived in this

adjudged unless the plaintiff has satisfied either (1) the "one-year residency requirement" under G. L. c. 208, § 5 (§ 5); or (2) the "alternative jurisdictional requirements" of § 5, by proving that he or she was domiciled in Massachusetts at the commencement of the divorce action and the "cause" for divorce occurred within Massachusetts.  Caffyn v. Caffyn, 441 Mass. 487, 487-488 (2004).  See § 5.[2]  In Caffyn, the Supreme Judicial Court was faced with the "question whether a plaintiff in a divorce action who has not complied with the one-year residency requirement . . . may, nevertheless, satisfy the alternative jurisdictional requirements of § 5, by . . . claiming that the 'cause' for the divorce, namely 'an irretrievable breakdown of the marriage' under G. L. c. 208, § 1B, occurred in Massachusetts."  Caffyn, supra at 487.[3]  Here, we are faced with

_____

[C]ommonwealth at the time when the cause occurred."  G. L. c. 208, § 4.

[2] "If the plaintiff has lived in this [C]ommonwealth for one year last preceding the commencement of the action if the cause occurred without the [C]ommonwealth, or if the plaintiff is domiciled within the [C]ommonwealth at the time of the commencement of the action and the cause occurred within the [C]ommonwealth, a divorce may be adjudged for any cause allowed by law, unless it appears that the plaintiff has removed into this [C]ommonwealth for the purpose of obtaining a divorce." G. L. c. 208, § 5.

[3] In Caffyn, the Supreme Judicial Court concluded that "a plaintiff domiciled in Massachusetts may satisfy the [alternative] jurisdictional requirements of § 5 by making a subjective determination that the marriage became irretrievably

the opposite question:  whether a plaintiff, who concedes she has not met the "alternative jurisdictional requirements" of § 5, as the "cause" for divorce did not occur in Massachusetts, may, nevertheless, satisfy the "one-year residency requirement" of § 5 by claiming to be a Massachusetts resident while working abroad.

This appeal arises out of a divorce action commenced in the Probate and Family Court by Rhitu Siddharth Rose (wife), a citizen of both Canada and the United States who grew up in Massachusetts,[4] against Alexander Stephane Gerard Rose (husband), a French citizen.  The parties, both of whom are international officers for the United Nations (UN), are assigned to missions all over the world.  At both the time the wife filed her complaint for divorce in Massachusetts and the time that the cause for divorce occurred, both parties were working abroad on separate UN missions.  On November 29, 2017, following a nonevidentiary hearing, a judge of the Probate and Family Court dismissed the wife's complaint for divorce due to lack of subject matter jurisdiction, concluding, among other things, that the wife failed to meet the one-year residency requirement

_____

broken (pursuant to [G. L. c. 208,] § 1B) within the Commonwealth."  Caffyn, 441 Mass. at 488.

[4] The wife's family moved to Massachusetts when she was approximately five years old.

of § 5.[5]  The wife appeals from the dismissal of her complaint, asserting that her temporary work abroad did not change her ongoing status as a Massachusetts resident.

We hold that the one-year residency requirement of § 5 entails an actual, continuous residence in the Commonwealth for twelve consecutive months immediately prior to the commencement of a divorce action, although certain temporary absences from the Commonwealth will not affect the continuity of a plaintiff's residence.  The determination of whether a plaintiff has maintained an actual, continuous residence in the Commonwealth for purposes of satisfying the one-year residency requirement is a question of fact to be decided on a case-by-case basis. Because the judge in this case did not have the benefit of our decision here, and no evidentiary hearing was held below, we vacate the judgment of dismissal and remand the matter for further proceedings consistent with this opinion.

Background.  The parties were married in New York on February 25, 2011.  At that time, the wife was living in New York in a rented apartment,[6] and the husband was living in Haiti on a UN assignment.  In the summer of 2011, when the husband

---

[5] The judge also determined that subject matter jurisdiction did not exist under G. L. c. 208, § 4, which the wife does not challenge on appeal.

[6] Although the wife owned a condominium in New York, she chose to rent an apartment closer to UN headquarters.

learned he would soon be relocated to Lebanon, the parties agreed that the wife would take time off from UN missions so that she could move to Lebanon with the husband. In anticipation of the upcoming overseas move, the wife vacated her apartment in New York and moved into her parents' home located in Holbrook. In December of 2011, the wife joined the husband in Lebanon, where they resided together until September of 2013, at which time the husband was reassigned to Mali (where he currently resides). Soon thereafter, the wife was assigned to Syria,[7] where she remained until late April of 2017. During breaks in between her missions in Syria, the wife traveled to other countries, including the United States (staying in her parents' home in Holbrook), Mali (visiting the husband in March of 2015), India (visiting her relatives in December of 2016), and England (visiting a friend in February of 2017). The husband also traveled to the United States three times between December of 2014 and May of 2015, joining the wife in Holbrook for a total of twenty-four days. After the wife's assignment in Syria concluded in late April of 2017, she briefly returned to her parents' home in Holbrook before accepting a new assignment in Switzerland on April 28, 2017.

---

[7] Although the wife was not under a UN assignment when she moved Lebanon, she later accepted a UN peacekeeping mission in Lebanon in July of 2012.

The husband filed a petition for divorce in France on April 25, 2017, notifying the wife of the French divorce proceedings via e-mail the same day. On May 26, 2017, the wife, through counsel, filed a complaint for divorce in the Probate and Family Court, alleging that an irretrievable breakdown of the marriage had occurred on January 20, 2017, while neither party was physically present in Massachusetts.[8] The wife listed her parents' home in Holbrook as her address on the complaint. On July 3, 2017, a deputy sheriff attempted to serve the husband's petition for divorce on the wife at her parents' Holbrook address; however, the deputy was informed by "[t]he individual who answered" the door "that the [w]ife had moved to New York, works for the [UN], and [did] not live at that residence."

On July 20, 2017, the husband's counsel filed a motion, pursuant to Mass. R. Dom. Rel. P. 12(b)(1), (2),[9] seeking to dismiss the wife's complaint for divorce on the grounds of (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction over the husband, and (3) the pending divorce proceedings in France initiated prior to the Massachusetts

---

[8] The wife's complaint was served on the husband in France on June 30, 2017.

[9] The rule is identical to Mass. R. Civ. P. 12 (b) (1), (2), 365 Mass. 754 (1974).

proceedings. Following a nonevidentiary hearing,[10] the judge dismissed the wife's complaint due to lack of subject matter jurisdiction, concluding that the wife had failed to meet the one-year residency requirement of § 5 because she was "physically living in Switzerland" when the complaint was filed. On appeal, the wife argues that she has been a Massachusetts resident since 2011 and that the judge erroneously concluded that she ceased to be a Massachusetts resident when temporarily working abroad.

Discussion. "We review de novo the allowance of a motion to dismiss for lack of subject matter jurisdiction under rule 12(b)(1)." 311 W. Broadway LLC v. Board of Appeal of Boston, 90 Mass. App. Ct. 68, 73 (2016). Here, because the wife conceded that the parties never lived together as spouses in Massachusetts and that the cause for divorce did not occur in Massachusetts, the wife was required to satisfy the one-year residency requirement of § 5 to maintain a divorce action in the Commonwealth.[11] Although residence is sometimes construed as the "practical equivalent of domicil," Shepard v. Finance Assocs. of

---

[10] At the October 19, 2017 hearing, the wife was present and represented by counsel. The husband's presence at the hearing was waived by the judge, and the husband's counsel filed a special appearance for the purpose of contesting jurisdiction.

[11] "The burden is on the party asserting jurisdiction to prove jurisdictional facts." Miller v. Miller, 448 Mass. 320, 325 (2007).

Auburn, Inc., 366 Mass. 182, 190 (1974), we think the plain language of § 5 indicates the Legislature's intent to treat residence and domicil as distinct concepts for purposes of establishing subject matter jurisdiction over divorce actions.[12] The concept of domicil, as it is used in § 5, has been defined in our case law as the plaintiff's "actual residence with intention to remain permanently or for an indefinite time and without any certain purpose to return to a former place of abode." Caffyn, 441 Mass. at 492, quoting Fiorentino v. Probate Court, 365 Mass. 13, 17 n.7 (1974).[13] Our appellate courts,

---

[12] "The parties have not supplied, and we have not been able to locate, any legislative history that would aid us in discerning the legislative intent of [§ 5]." Caffyn, 441 Mass. at 493 n.13. The Supreme Judicial Court has observed that there has been some uncertainty in the past regarding whether the term "lived" under § 5 was intended to be construed as "domiciled." Fiorentino v. Probate Court, 365 Mass. 13, 23 n.15 (1974) (noting that "if the use of 'lived' in § 5 means 'domiciled,' . . . then the justification for the [durational] residence requirement evaporates altogether"). Indeed, we think it unlikely that the Legislature intended for "lived" and "domiciled" to be used interchangeably, given that the former is invoked only when the "cause [for divorce] occurred without the [C]ommonwealth," and the latter is invoked only when the "cause [for divorce] occurred within the [C]ommonwealth." § 5. To conclude otherwise would render the location of the cause for divorce irrelevant, and would thus be "inconsistent with principles of statutory construction under which we 'give effect to all words of a statute, assuming none to be superfluous.'" Chin v. Merriot, 470 Mass. 527, 537 (2015), quoting Commonwealth v. Semegen, 72 Mass. App. Ct. 478, 480 (2008). See Holmes v. Holmes, 467 Mass. 653, 659 (2014) (statutory language is clearest indication of legislative intent).

[13] Although the Supreme Judicial Court struck down as unconstitutional a prior version of § 5, containing a two-year

however, have yet to define the parameters of the one-year residency requirement under § 5.  It is therefore incumbent upon us to do so now.

Nearly every State, including Massachusetts, imposes a statutory durational residency requirement to ensure "that those who seek a divorce from its courts [are] genuinely attached to the State," and "to insulate [its] divorce decrees from the likelihood of collateral attack."  Sosna v. Iowa, 419 U.S. 393, 404-405, 409 (1975).  Many State courts have construed their respective durational residency requirements as mandating an "actual" and "continuous" residence in the State during the required statutory period.[14]  Moreover, although "continuous"

_____

residency requirement, see Fiorentino, 365 Mass. at 25-26, the United States Supreme Court later upheld Iowa's one-year residency requirement.  Sosna v. Iowa, 419 U.S. 393, 396 (1975).

[14] See, e.g., Morgan v. Morgan, 103 Conn. 189, 194-195 (1925) (Connecticut's durational residency requirement entails "actual" and continuous residence, and is not satisfied by plaintiff's in-State presence only "three or four times a year, for two or three days at a time"); Tipton v. Tipton, 87 Ky. 243, 246 (1888) (Kentucky's durational residency requirement mandates "actual residence" that is "substantial" and must be plaintiff's "abiding place"); Doerner v. Doerner, 46 R.I. 41, 42-43 (1924) (Rhode Island's durational residency requirement mandates actual, continuous residence and physical presence during required period); Dickinson v. Dickinson, 138 S.W. 205, 208 (Tex. Civ. App. 1911) (Texas's durational residency requirement necessitates "actual" and "continuous" residence with "bulk" of time spent there).  See also Jenness v. Jenness, 24 Ind. 355, 359 (1865) (Indiana's durational residency requirement necessitates "actual bona fide dwelling"); Coulter v. Coulter, 124 Mo. App. 149, 155-156 (1907) (Missouri's durational residency requirement entails "actual residence"); Cheseborough

usually does not mean "literally uninterrupted," <u>Allan</u> v. <u>Allan</u>, 132 Conn. 1, 3 (1945), a plaintiff generally must maintain a meaningful physical presence in the State to satisfy the durational residency requirement.[15]  We are therefore persuaded to join those States and construe our durational residency

_____

v. <u>Cheseborough</u>, 6 Pa. D. & C. 765, 768 (1925) ("mere legal residence" in State, while maintaining "actual" residence out of State, does not satisfy Pennsylvania's durational residency requirement).

  [15] See, e.g., <u>Wood</u> v. <u>Wood</u>, 140 Ark. 361, 363-364 (1919) (wife's actual residence in Arkansas was not interrupted by her temporary absence of few months to visit sister in Mississippi); <u>Laplace</u> v. <u>Briere</u>, 152 La. 235, 239-240 (1922) (plaintiff who traveled frequently for vacations and visits with relatives did not forfeit actual, continuous residence in Louisiana because she always returned to Louisiana residence); <u>Meyer</u> v. <u>Meyer</u>, 68 A.3d 571, 584-585 (R.I. 2013) (Rhode Island's one-year residency requirement satisfied where wife spent slightly more than one-half of year in Rhode Island and remainder of year at her vacation home in France).  Cf. <u>Lanham</u> v. <u>Lanham</u>, 300 Ky. 237, 238-239 (1945) (husband, who left parents' Kentucky home to live in Ohio with wife, joined army after their separation, sent his belongings to his parents' Kentucky home, and expressed his intention to permanently return to Kentucky once he was discharged from army, failed to establish "actual residence" in Kentucky); <u>Trinchard</u> v. <u>Grace</u>, 152 La. 942, 944-945 (1922) (although plaintiff never intended to abandon Louisiana as domicil and visited State periodically, plaintiff failed to satisfy Louisiana's actual, continuous residence requirement due to his acceptance of an out-of-State job and maintenance of out-of-State residence); <u>Doerner</u>, 46 R.I. at 42-43 (teacher who spent majority of year working in New York and only returned to Rhode Island for holidays and weekends failed to satisfy Rhode Island's requirement of actual, continuous residence); <u>McCarthy</u> v. <u>McCarthy</u>, 45 R.I. 367, 369-370 (1923) (actress who was physically present in Rhode Island only relatively small part of each year due to out-of-State work commitments failed to satisfy Rhode Island's durational residency requirement mandating actual, continuous residence during prescribed statutory period).

requirement under § 5 as requiring a plaintiff to maintain an actual, continuous residence in the Commonwealth for twelve consecutive months immediately prior to the commencement of the divorce action.  See, e.g., Meyer v. Meyer, 68 A.3d 571, 583 (R.I. 2013) ("in order to satisfy [Rhode Island's] statutory [one-year] residency requirement in the divorce context, there must be on plaintiff's part an actual and continuous residence and dwelling within this [S]tate for the prescribed period, which must immediately precede the filing of the petition" [quotation and citation omitted]).  See also E.N. v. E.S., 67 Mass. App. Ct. 182, 191 n.19 (2006) (indicating in dicta that plaintiff "resid[ing] in Massachusetts for more than twelve consecutive months" may satisfy one-year residency requirement of § 5).  The requirement of an actual, continuous residence should be applied reasonably, and certain temporary absences from the Commonwealth will be permitted as long as a plaintiff has maintained a meaningful physical presence during the required twelve-month period.  See, e.g., Meyer, supra at 584-585 (Rhode Island's one-year residency requirement satisfied where wife spent slightly more than one-half of year in her Rhode Island home).  Cf. McCarthy v. McCarthy, 45 R.I. 367, 369-370 (1923) (Rhode Island's durational residency requirement not satisfied where wife was only physically present in Rhode Island two months per year, spending rest of year working in other

States as actress).  Such a construction ensures that a plaintiff seeking to initiate divorce proceedings has a "modicum of attachment" to the Commonwealth, and furthers the Commonwealth's "parallel interests both in avoiding officious intermeddling in matters in which another State has a paramount interest, and in minimizing the susceptibility of its own divorce decrees to collateral attack."  Sosna, 419 U.S. at 407.  See Fiorentino, 365 Mass. at 17 ("These statutory restrictions on the divorce powers of Massachusetts courts were presumably intended to prevent the bringing of migratory causes of action in Massachusetts courts and to ensure the validity . . . of the decrees of Massachusetts courts against collateral attack by limiting proceedings in divorce actions to situations where the Commonwealth has some substantial connection with the dispute being adjudicated").  See also Chin v. Merriot, 470 Mass. 527, 532 (2015), quoting Commonwealth v. Figueroa, 464 Mass. 365, 368 (2013) ("Under well-established principles of statutory construction, 'a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated'").

Whether a plaintiff has maintained an actual, continuous residence in the Commonwealth sufficient to satisfy the one-year residency requirement of § 5 is a question of fact that must be determined on a case-by-case basis. See Meyer, 68 A.3d at 583 ("a finding that a plaintiff . . . had resided within the [S]tate for the requisite period of time is a finding of fact"). See also Commonwealth v. Chown, 459 Mass. 756, 764 (2011), quoting Rummel v. Peters, 314 Mass. 504, 517 (1943) ("the determination of residency . . . typically is 'largely a question of fact'"); Doyle v. Goldberg, 294 Mass. 105, 108 (1936) ("The determination of the place of residence or domicil is commonly a question of fact"). Moreover, although residence and domicil are distinct concepts for purposes of § 5 (namely because domicil has the "additional element of intent," Meyer, supra at 582), they may be proved through many of the same factors. See Caffyn, 441 Mass. at 492, quoting Fiorentino, 365 Mass. at 22 n.12 (these factors include "without limitation, whether the plaintiff has 'a Massachusetts driver's license and automobile registration; whether he or she has purchased a home or has leased an apartment in the Commonwealth; . . . [and] whether [his or her] personal property, including household goods, has been brought here'"). See also Meyer, supra at 584 (factors relevant to residency determination include "receipt of mail, voter registration, physical address, the payment of rent,

bank accounts, vehicle registration, storage of clothing and personal effects, payment of taxes, and prior history of residence").  These factors, along with evidence of a plaintiff's physical presence in the Commonwealth during the required twelve-month period, should allow a judge to "make 'a reasonably accurate determination'" as to whether a plaintiff has maintained an actual, continuous residence for purposes of satisfying the one-year residency requirement under § 5. Caffyn, supra, quoting Fiorentino, supra at 22.

Here the judge concluded, after conducting a nonevidentiary hearing, that the wife did not satisfy the one-year residency requirement because she "was physically living in Switzerland" when she commenced divorce proceedings in Massachusetts. Because there was no evidentiary hearing below, and the judge did not have the benefit of our decision here, there was no factual determination made as to whether the wife maintained an actual, continuous residence in Massachusetts for twelve consecutive months immediately prior to filing her complaint for divorce.  Moreover, although the wife alleged that she returned to her parents' Holbrook home between UN assignments, it is unclear how frequently she was physically present in Massachusetts during the required statutory period.[16]

---

[16] In support of her claimed Massachusetts residency, the wife asserts, among other things, that she has a Massachusetts

Accordingly, we vacate the judgment and remand the matter for an evidentiary hearing and findings of fact as to whether the wife has satisfied § 5's one-year residency requirement in light of the criteria set forth herein.[17]

<u>So ordered</u>.

---

driver's license, is registered to vote in Holbrook, has medical providers in Massachusetts, is registered as an organ donor in Massachusetts, uses her parents' Holbrook address for her credit cards and tax returns, and owns real property in Roslindale (although she does not claim to reside in Roslindale). The wife also vaguely averred that when she "was on leave in the United States," she would stay in her parents' Holbrook home. However, the wife did not specify the dates when she stayed in Holbrook, apart from her brief visit in April of 2017.

[17] The husband's request for attorney's fees in connection with this appeal is denied.

RUBIN, J. (concurring).  I join the court's opinion but write separately to note an unintended consequence of the way in which the language of G. L. c. 208, § 5 (§ 5), has been drafted that could have serious deleterious consequences for those who make their homes in Massachusetts but must work elsewhere, particularly those who serve in the armed forces.

Prior to 1975, § 5 read, "[i]f the libellant has lived in this [C]ommonwealth for two years last preceding the filing of the libel if the cause occurred without the [C]ommonwealth, or if the libellant is a resident of the [C]ommonwealth at the time of the filing of the libel and the cause occurred within the [C]ommonwealth, a divorce may be decreed . . ." (emphasis added).  Section 5, as amended through St. 1969, c. 162.[1]  And, in Fiorentino v. Probate Court, 365 Mass. 13, 23 n.15 (1974), the Supreme Judicial Court indicated that "lived in" and "resident of" might be "construed as meaning 'domicil' and 'domiciliary,'" respectively.  If that were the case, anyone who had maintained their domicil within Massachusetts for one year could invoke the court's divorce jurisdiction under § 5, no

_____

[1] The current language of "lived in" in the first clause of § 5 and "domiciled within" in the second was adopted as part of the 1975 amendment to the domestic relations laws.  The 1975 Amendment purported to "enable the extension of the Massachusetts rules of civil procedure to domestic relations proceedings."  1975 Senate Doc. No. 970, § 10.  The Massachusetts Rules of Civil Procedure had been enacted just the previous year.

matter where they had been physically during the time since they established their domicil here and no matter where the "cause" of the divorce occurred.

In 1975, the Legislature replaced the words "resident of" in the second clause with "domiciled within," while leaving the words "lived in" in the first clause untouched. St. 1975, c. 400, § 10. The Legislature thus indicated that it intended "lived in" to have a different meaning than "domiciled within." Under the statute, even bona fide domiciliaries thus may not obtain a divorce in this Commonwealth under § 5 unless they have "lived in," that is, as the court clarifies today, maintained an actual, continuous residence in, the Commonwealth, for one year if the cause of the divorce occurred outside the Commonwealth. And that one-year actual residency requirement is the basis of the court's ruling.

Section 5, however, provides an essential means of obtaining jurisdiction over divorces for married Massachusetts domiciliaries who have never "lived together as husband and wife" -- or, more accurately, despite the outdated language in the statute, as spouses -- "in this [C]ommonwealth." G. L. c. 208, § 4 (§ 4). That is because the other statute providing for jurisdiction over divorces, § 4, denies jurisdiction in all cases in which "the parties have never lived together as husband and wife in this commonwealth," and in any case in which the

cause of divorce "occurred in another jurisdiction, unless before such cause occurred the parties had lived together as husband and wife in this [C]ommonwealth, and one of them lived in this [C]ommonwealth at the time when the cause occurred."

To "live together as husband and wife" requires that both parties be domiciliaries of the Commonwealth and that they cohabitate within the Commonwealth. See Newth v. Newth, 241 Mass. 431, 432 (1922). To limit the court's divorce jurisdiction to cases where there has been such cohabitation would be incompatible with the modern realities of marital relationships, cohabitation, and gender equality, and would burden the right of all adult individuals to control their decisions relating to family. In today's world many married couples may choose lives in which they do not "live together as husband and wife" within the Commonwealth, anywhere else in the United States, or, indeed, in any location. Further, it is an essential component of the equal status of all and of the control of all adult individuals over their decisions relating to family, that the law no longer presumes that marriage necessarily results in such cohabitation.

In light of this, it is clear the protection afforded the people of the Commonwealth by § 5 is of increased importance, and that the scope of the one-year residency requirement in that section may have great significance. And, whatever the

consequences of the Legislature's decision to maintain or impose such a requirement was in 1975, in current circumstances, the one-year residency requirement may serve to deeply disadvantage those who live in Massachusetts but work elsewhere, particularly those citizens of Massachusetts who serve in the armed forces.[2] As the law currently stands, due solely to her deployment, an active duty service member domiciled in Massachusetts may be unable to invoke the jurisdiction of our courts under § 5 to obtain a divorce. Even if she has established domicil in Massachusetts by moving here with the intention of permanently remaining in the Commonwealth, and has done what the wife here has done, registering to vote here, registering her car here, and the like, if she is deployed overseas within months of arrival in Massachusetts, and the cause of her divorce occurs during that deployment, she may be unable to invoke the jurisdiction of our courts, and perhaps of any court in the United States, to end her marriage. Indeed, the only courts open to her may be the courts of the country to which she has been deployed.

The divorce statute is "intended to be for the benefit of our own citizens." Ross v. Ross, 103 Mass. 575, 576 (1870).

---

[2] I note that there is no claim before us that the residency requirement violates the Massachusetts Constitution and Declaration of Rights.

While this means that the Legislature is free within constitutional limits not to protect people who claim to have connections with the Commonwealth but really have come here only to get divorced, assuming there are any individuals who would do that, presumably we do not want to remit our own citizens to a foreign divorce process unnecessarily.  Thus, whatever the circumstances were at the time that the current language of § 5 was adopted, I cannot imagine that the unfair result I have described is one that the Legislature genuinely desires.  I therefore write to point out the consequence of the language of the statute we apply today so that, should it wish to do so, the Legislature can take corrective action.