Argued May 29, affirmed June 18, 1973

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
DUNN, *Respondent, and* DUNN, *Appellant.*
511 P2d 427

*Forrest E. Cooper,* Lakeview, argued the cause and filed the brief for appellant.

*Theodore R. Conn,* Lakeview, argued the cause for respondent. With him on the brief were Conn & Lynch, Lakeview.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

A decree of dissolution of the above entitled marriage was entered. Under that decree the mother was awarded the custody of the two remaining minor children, with $100 per month child support for each. The husband appeals.

His principal contention is that there was insufficient evidence to support the court's finding that there were irreconcilable differences or its conclusion that such differences were irremediable, within the meaning of ORS 107.025.

ORS 107.025 is probably the key section, so far as expressing the legislative philosophy which undergirded the adoption of the 1971 "no fault" divorce law (Oregon Laws 1971, ch 280, p 387). It states:

> "The dissolution of a marriage may be decreed when irreconcilable differences between the parties have caused the irremediable breakdown of the marriage."

Recently the Court of Appeals of California in *In re Marriage of Walton,* 28 Cal App 3d 108, 104 Cal Rptr 472 (1972), in discussing the "no fault" act of that state (Cal Civil Code § 4500 et seq. (West 1970)), which contains in Sec 4506 (1) a provision identical to ORS 107.025, stated:

> "* * * [I]t is asserted that elimination of the fault concept in dissolution proceedings is unjust and unfair because it permits a spouse guilty of morally reprehensible conduct to take advantage of that conduct in terminating marriage against the wishes of an entirely unoffending spouse. While this may be true and while such a result may be offensive to those steeped in the tradition of personal responsibility based upon fault, this contention presents no issue cognizable in the courts.

After thorough study, the Legislature, for reasons of social policy deemed compelling, has seen fit to change the grounds for termination of marriage from a fault basis to a marriage breakdown basis. (See Report of 1969 Divorce Reform Legislation of the Assembly Committee on Judiciary (4 Assem.J. (1969)), *supra,* at p. 8057; see also In Re Marriage of McKim, *supra,* 6 Cal.3d at pp. 678-679, 100 Cal. Rptr. 140, 493 P.2d 868.) 'It is not the province of the courts to inquire into the wisdom of legislative enactments.' (Harsco Corp. v. Department of Public Works, 21 Cal.App.3d 272, 279, 98 Cal. Rptr. 337, 342.)" 104 Cal Rptr at 481.

In *Unander v. Unander,* 265 Or 102, 105, 506 P2d 719 (1973), our Supreme Court recently had occasion to comment:

"* * * Now evidence of 'fault' will ordinarily not be admissible and cannot be the basis of dividing property or awarding alimony. ORS 107.036.

"The adoption of the 'no fault' concept of divorce is indicative of the state's policy, as exhibited by legislation, that marriage between spouses who 'can't get along' is not worth preserving. * * *"

The term "irreconcilable differences" is not defined in the Oregon act. The California act states:

"Irreconcilable differences are those grounds which are determined by the court to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved." (Cal Civil Code § 4507 (West 1970).)

The Oregon no fault divorce law is clearly patterned in many, though by no means all, of its provisions upon the California act. Our attention has been directed to nothing in the legislative history of the Oregon act to indicate our legislature intended a meaning widely at variance with the foregoing California provision.

■■ Thus we conclude, once the existence of a difference or differences claimed by the petitioner to be irreconcilable has been established, that the test our statute contemplates is: (1) whether or not such difference is one that reasonably appears to the court to be in the mind of the petitioner[①] an irreconcilable one, and (2) based upon that difference, either alone or in conjunction with other differences established by the evidence, whether or not the court concludes that the breakdown of that particular marriage is irremedi-

---

[①] See, Comment, *The End of Innocence: Elimination of Fault in California Divorce Law*, 17 U.C.L.A. L Rev 1306 (1970). The author points out at 1321-22:

"The necessity of a subjective marital failure standard in the context of a no-fault system becomes apparent when compared with the alternative to a determination based on state of mind. If irreconcilable differences is not an individual representation that one partner has assessed the marital situation and has decided that the marriage cannot continue, then the trial court must make an independent determination of the viability of the marriage. However, no standards for the exercise of trial court discretion were provided by the Legislature, and, as one writer has pointed out, the vast, unguided discretion which could result would be intolerable:

" '[T]he legislature . . . would shift the responsibility for setting standards for divorce to the courts, which are not equipped to legislate a compromise. What one judge considers to be a marriage that is beyond repair, another may find still workable. The very liberal judge may grant every divorce, the conservative one hardly any. . . . [T]he courts in innumerable conflicting and unpredictable cases would make the divorce law. Their discretion would be unlimited. The public and their legal advisers would have no way of knowing when divorce would be granted and when refused.'

"Thus, the prima facie case for dissolution should be satisfied by the declaration of petitioner that he or she sincerely believes that the marriage has irreparably broken down. * * *"

For a careful analysis of the history and factors leading up to "no fault" divorce legislation, see: Levy, Uniform Marriage and Divorce Legislation: A Preliminary Analysis, Prepared for the Special Committee on Divorce of the National Conference of Commissioners on Uniform State Laws.

able. Furthermore, a difference to be irreconcilable within ORS 107.025 need not necessarily be so viewed by both parties, though it may be. It may under certain circumstances be unilaterally so viewed as well.

In the case at bar, apparently in part because the custody of two minor children was involved (ORS 107.036 (2)), the court heard extensive testimony concerning both the differences deemed by one party to be irremediable, whether viewed individually or in toto, and also relating to who caused these differences to arise.

■ We see no reason to spread before posterity the development and crystallization of antagonisms into irreconcilable differences in the mind of this petitioner throughout her 20-year marriage. From our examination we conclude the evidence fully supports, and we agree with the trial court's finding, that irreconcilable differences existed in the petitioner's mind having a substantial basis in the evidence and which had caused the irremediable breakdown of the marriage.

After the initial hearing the court recessed the matter for 60 days, during which period it ordered the director of the juvenile department to conduct an investigation into matters relating to custody. He also instructed the parties to seek locally available counseling.

■■ The report was duly prepared after separate interviews with both parents and with both children and delivered to the court and to both counsel in advance of the second hearing. It was also examined personally by appellant. At the second hearing his own counsel questioned him extensively concerning it. Neither party, however, offered the report as an ex-

hibit. Thus it is not before this court. From the extensive questioning of the appellant by his own counsel, however, much of its content is apparent. If appellant considered other aspects of it as favorable to his position he could have called the juvenile director, offered it in evidence and proceeded to examine him concerning it. He did not. Thus he cannot now complain of its absence. We are satisfied from the record that the court correctly awarded custody of the children to the mother.

■ Appellant's final contention is that the court, since no conciliation court services had been established in that circuit (ORS 107.520),[2] in addition to directing the parties to seek local counseling[3] should also have required them to seek the services of a psychiatrist allegedly specializing in marriage counseling in a city more than 170 miles distant. Neither party had ever previously consulted him. This request was not made until three weeks after the first hearing. Assuming, without deciding, that the trial court had the power to enter the later requested order at all, any such power would be discretionary. Clearly the court did not abuse its discretion in refusing to enter such order. The claimed error is wholly without merit.

Affirmed.

---

[2] Lake County is a separate judicial district. We take judicial notice that its 1972 population was 6,740 and its area 8,340 square miles.

[3] The parties did, during the 60-day period, engage with the parish priest of the wife in counseling as the court ordered. At the second hearing the wife testified in effect as she had at the first that she would not under any circumstances return to live with appellant and that in her opinion the breakdown of the marriage remained irremediable.