OPINION OF THE COURT
Anthony J. Falanga, J.
Plaintiff wife in action No. 2 moves by order to show cause for an order (1) pursuant to CPLR 3212, granting her partial *295 summary judgment on her cause of action for a divorce on the ground that the relationship between the parties has been irretrievably broken for a period of at least six months (Domestic Relations Law § 170 [7]), and during the pendency of the action; (2) pursuant to Domestic Relations Law § 236 (B) and § 240, directing the defendant husband to pay all carrying charges of the marital residence located at xx Cedar Drive, Great Neck, New York; (3) pursuant to Domestic Relations Law § 236 (B) (5-a), directing the husband to pay nontaxable maintenance to the wife in the sum of $12,358 per month, effective as of the date of application with any retroactive arrears paid in one lump sum; (4) pursuant to Domestic Relations Law § 240, directing the husband to pay the wife child support of $9,221 per month for the parties’ three unemancipated children with any retroactive arrears paid in one lump sum; (5) pursuant to Domestic Relations Law § 240, directing the husband to pay all educational expenses of the children, including tutoring and all expenses related to Hebrew school; (6) directing the husband to pay all past due and future summer camp, summer activities and extracurricular activity expenses of the children; (7) pursuant to Domestic Relations Law § 236, directing the husband to pay all expenses related to the wife’s use of a certain 2008 Mercedes Benz R-350 automobile, including loan payments, insurance, gasoline and oil, tires, maintenance, repairs and all inspection and registration fees; (8) pursuant to Domestic Relations Law § 236 (B) (8), directing the husband to continue to provide medical, prescription drug and hospitalization insurance for the benefit of the wife and children; (9) pursuant to Domestic Relations Law §§ 236 and 240, directing the husband to pay all uninsured medical, dental, psychiatric, psychological, optometric, orthodontic, drug and pharmacy expenses of the wife and children; (10) directing the husband to obtain and/or continue in full force and effect a life insurance policy in the principal sum of $2,000,000 and naming the wife as irrevocable beneficiary; and (11) pursuant to Domestic Relations Law § 237, directing the husband to pay the sum of $50,000 to the wife’s attorneys as interim counsel fees. The husband opposes the motion and cross-moves for an order granting the husband a schedule for parenting time with the children, pendente lite, and requiring the wife to surrender the children’s passports to the court.
Prior Motion
On a prior motion to the court, in which the husband sought full consolidation of action No. 1 and action No. 2, the wife sought joinder of the actions for trial, without consolidation, so
*296 that she could pursue the benefits of the newly enacted matrimonial legislation available to all actions commenced after October 12, 2010. By decision and order dated January 18, 2011, the court directed that action No. 1 and action No. 2 be joined for trial and discovery and found, in pertinent part, as follows:
“In the instant case, the husband wishes to preserve his priority in time, perhaps for commencement date purposes under equitable distribution and the cause of action he has asserted, and that right should not be denied. Similarly, the wife wishes to proceed on her cause of action, either in the event the husband fails on his or, perhaps, under the concept of a dual divorce (see De Marinis v De Marinis, 74 AD2d 815 [2d Dept 1980]). Moreover, she may seek to pursue pendente lite relief under the new statutory guidelines which will only be available to her in action No. 2, commenced after October 12, 2010. A party is not obligated to counterclaim in action No. 1 just because the husband has previously commenced such an action against her. Instead, the wife may assert an independent cause of action in a separate suit (action No. 2) that will not be subject to dismissal on the ground that ‘there is another action pending between the same parties for the same cause of action’ (CPLR 3211 [a] [4]), as long as the relief requested is different from that requested in action No. 1 (see Bofinger v Bofinger, supra). As stated by the Court of Appeals in Motler v Motler (60 NY2d 244 [1983]), under CPLR 3019, counterclaims are permissive and a party may assert her claim against the plaintiff as a counterclaim or by bringing a separate suit. In permitting the wife to withdraw her counterclaim and commence a new action after the passage of the equitable distribution law, the Motler court found that a litigant should not be barred from receiving the benefits of the new law by being denied procedural remedies she is unconditionally entitled to under the CPLR. In the case at bar, the wife has commenced a separate action and she is entitled to pursue her requested relief within said action, without full consolidation” (A.C. v D.R., 31 Misc 3d 517, 520-521 [2011]).
The court directed a bifurcated trial on the issue of grounds, presently scheduled for April 19, 2011.
*297 The Instant Motions
In action No. 2, the wife now moves to partake in the benefits of the new matrimonial legislation and seeks, inter alia, pendente lite maintenance and counsel fees as well as partial summary judgment on grounds (Domestic Relations Law § 170 [7]) under the new law. She also seeks pendente lite child support, educational expenses and related relief, as well as payment of all the carrying charges for the parties’ home, her automobile, medical, dental and life insurance and unreimbursed medical expenses. The court notes that the instant motions were fully submitted on the date of the preliminary conference, January 12, 2011, at which time the husband consented to pay the carrying charges on the marital residence pendente lite, including utilities, real estate taxes and homeowner’s insurance and to maintain health insurance for the entire family and pay uncovered health expenses, provided the wife uses in network providers. Additionally, he agreed to maintain the existing life insurance policy with a $500,000 death benefit. Accordingly those portions of the motion that seek such relief have been resolved. The court notes that the instant motions were submitted before the determination on the prior motion with respect to consolidation was issued, and much of the advocacy herein is repetitive of the positions taken by the litigants on the prior motion.
The background of the parties was set forth in the prior motion as follows (the court notes that the address of the parties was incorrectly placed in Cedarhurst rather than Great Neck, New York):
“Marital and Litigation History “The parties were married on October 4, 1992. The wife is 48 and the husband is 52 years old. The parties have three children: D.C., born September 1, 1997 (age 13), A.C., born July 3, 2000 (age 10) and N.C., born February 17, 2003 (age 7).
“The parties and the children reside together in the marital residence, located in Cedarhurst, New York, purchased on May 11, 2000 for $945,000. There is no outstanding mortgage on the residence. Title to the premises is in the name of the husband and the wife.
“The wife has a Master’s degree in journalism, attained in 1990 and is presently a homemaker. The *298 husband is a physician and earned his medical degree in 1983. He has monthly gross W-2 income of $15,833, and is employed by A, A, of Westchester, PC.
“A preliminary conference was held on January 12, 2011. Pursuant to the so-ordered preliminary conference stipulation, the parties agreed that the husband would pay the carrying charges on the marital residence pendente lite, including utilities, real estate taxes and homeowner’s insurance and would maintain health insurance for the entire family and pay uncovered health expenses, provided the wife uses in-network providers. Additionally, it was agreed that the husband would maintain the existing life insurance policy with a $500,000 death benefit. Grounds was not resolved at the preliminary conference and the parties agreed to attend the Parent Education and Custody Effectiveness (PE.A.C.E.) Program. The appointment of a real estate appraiser to appraise the marital residence was deferred; however, by separate order, Mark S. Gottlieb, CPA, PC, was appointed to value the husband’s interest in the medical practice, with the cost to be paid 100% by the husband, subject to reallocation at trial.
“The wife paid a retainer of $15,000 with funds claimed to be premarital. The husband paid a retainer of $11,000 with funds from marital savings.” (A.C. v D.R., 31 Misc 3d at 518-519.)
In support of the remaining issues, the wife now alleges as follows: that it is imperative that the court grant her immediate financial relief because the husband, a highly successful anesthesiologist with annual income exceeding $500,000, refuses to provide sufficient direct support to her, leaving her without sufficient funds to meet her and the children’s reasonable needs; that, while she has certain separate property assets, she should not be compelled to deplete these assets to provide for the family’s daily expenses; that the husband seeks to strangle her financially and she has been forced to use credit cards and has accumulated significant debt; that throughout the marriage the husband has earned substantial income as reported on the parties’ joint federal income tax returns, as follows:
*299 [[Image here]]
that prior to the marriage, and for a short time thereafter, the wife worked in a travel agency owned by her family; that after the birth of the parties’ first child, the parties agreed that the wife would not work and she has been out of the workforce for approximately 10 years; that she is almost solely responsible for the care of the three children and relies on the husband for her and the children’s support; that, throughout the marriage, the parties have lived a comfortable upper middle class, if not affluent lifestyle, which included a $960,000 home in Great Neck, New York, with no mortgage, annual family vacations, dining out in expensive restaurants and live-in domestic help; that the wife’s net worth statement accurately reflects monthly expenses of almost $26,000; that the husband regularly deposited funds into the parties’ joint checking account which the wife utilized to pay the household bills and family expenses; that the wife also had unfettered use of credit cards which the husband paid in full each month; that, since the commencement of the litigation, the husband has stopped depositing funds into the parties’ joint account and has refused to pay the balance on her credit card bills; that, because of the husband’s failure to provide necessary support, the wife has relied on her credit cards to meet everyday expenses and has accrued $20,000 in debt, the limit of her credit; that the newly enacted provisions of the Domestic Relations Law directs a formula for calculating the presumptively correct amount of temporary maintenance which, based on the parties’ respective income from all sources (the husband’s income capped at $500,000 and the wife’s dividend income of $8,516), amounts to $148,297 per annum (exhibit M annexed to the moving papers); that the Child Support Standards Act (CSSA) provides a formula for the calculation of child support and, utilizing the husband’s income of $529,857 (which is net of FICA and Medicare) and deducting the maintenance sum of $148,297, amounts to income of $381,560 for the purpose of calculating child support, multiplied by 29% for three children results in a child support obligation of $110,652.40 per year, or $9,221 per month; that the wife claims that such an award is necessary to meet the needs of the children based on the standard of living of the parties; that, although the husband is paying some of the carrying charges for the marital residence, he has refused to provide necessary funds for certain repairs at the *300 marital residence, particularly an outstanding balance of $7,650 owed to a painting contractor and he should be directed to pay same; that the husband has recently indicated his unwillingness to continue to pay for the children’s Hebrew school and he should be directed to pay for all of the children’s educational expenses including Hebrew school and tutoring for all three children, together with all extracurricular activities, tennis, karate, summer camp and summer activities; that the wife drives a 2008 Mercedes Benz R-350 and all expenses for said vehicle have always been paid by the husband and he should be directed to continue same; that the wife has paid her attorney an initial retainer of $15,000 from her separate property funds which are limited; that the husband has income of at least $550,000 per year and has millions of dollars of liquid assets under his control; that the wife does not have the financial ability to pay her attorneys and an award of counsel fees is warranted to enable her to prosecute the action.
With respect to summary judgment, the wife alleges as follows: that it is clear that the parties’ relationship has been irretrievably broken for a period of at least six months; that the wife points to the husband’s action for divorce against her on the ground of cruel and inhuman treatment which alleges that it is unsafe and improper for the parties to continue to reside together; that the husband cannot reasonably assert that there is a question of fact as to the irretrievable breakdown of the parties’ relationship; that partial summary judgment for a divorce should be granted with entry of the judgment of divorce held in abeyance pending the resolution of the ancillary issues involved herein; counsel urges that summary judgment is the appropriate remedy as there are no material facts to try.
In opposition to the motion, the husband alleges as follows: that, while the wife was raised in a wealthy family in Great Neck, he comes from a more modest lower-middle class family in Little Neck, New York; that he graduated from SUNY Downstate Medical Center in 1983 and did his residency at NCMC in Nassau County; that he is presently Director of Anesthesiology at S.J.M.C. and is fortunate to earn a comfortable living; that his income has decreased by nearly $275,000 in the last three years; that, prior to having children, the wife earned between $40,000 and $50,000 as a travel agent and the manager of her parents’ business, S.Travel; that it was agreed that the wife would stay at home to care for the children until the youngest child started school; that the youngest child started school one year ago but the wife has refused to return to work in any *301 capacity; that, although the wife’s employment at her family’s business ended, due to the interest she held, the wife continued to collect substantial dividends throughout the marriage and has amassed approximately $400,000, most of which is marital in nature; that the husband’s statement of net worth reflects marital savings of over $5 million, the result of living frugally and not spending extravagantly; that the wife’s statement of net worth reflects inflated expenses that are not in keeping with the parties’ lifestyle; that, each month, the husband paid the family’s “billed expenses” such as utilities, car payment, insurance, etc., and the wife chargéd the family’s day-to-day expenses for food, clothing dining out, etc., on her Citibank card; that the husband annexes credit card statements from Citibank for 2008, 2009 and 2010 (exhibits 13, 14, 15 on the cross motion), which show that the wife charged expenses totaling approximately between $3,000-$6,000 per month during those years and not the $10,820 per month sum in the November 2010 Citibank statement claimed to be illustrative of her regular spending (exhibit L annexed to the moving papers) (the court notes that a review of the Citibank statements shows usual and regular charges for pizza, Waldbaums, gasoline, hair salon, etc., and the occasional more costly expense for dental work, airline tickets, and vacations and not the repetitious charges for Gucci, Saks, Bloomingdales and Bergdorf Goodman found in the wife’s exhibit L); that the husband challenges almost every amount listed on the wife’s statement of net worth from gasoline, car insurance and domestic help, through gardening and landscaping, summer camp, tutoring, religious instructions and the extracurricular activities of the children; that the husband provides a chart that he claims demonstrates that the family’s billed monthly expenses total $7,274 and not the $10,675 sum claimed by the wife; that the husband provides another chart that he claims demonstrates that the usual family expenses charged by the wife total $4,980 per month and not the $15,013 sum now claimed by the wife; that the family did not take lavish vacations because of the husband’s work schedule that provided only two one-week vacations per year; that the family usually took a discounted cruise or a trip to Colonial Williamsburg and once went to Israel the summer of their son’s Bar Mitzvah; that the Israel trip cost, at the most, $15,000, and not the $24,000 yearly sum claimed by the wife; that the health insurance provided for the family does not require co-pays and that the wife’s claimed expenses of $500 per month for unreim *302 bursed medical expenses is for the wife’s recent elective cosmetic procedures undertaken by her to enhance her appearance for her paramour and should be paid for by the wife from her separate accounts; that the husband is current on all household and family expenses, except for (a) the wife’s credit card where she has doubled her spending in anticipation of this application and (b) an outstanding bill for painting in the sum of $7,500, a charge incurred without his consent; that there is nothing urgent about the wife’s application as she holds almost $400,000 in liquid assets in her name; that application of the new maintenance provisions should not apply to this case as the husband’s action was first in time under the prior law; that if the new maintenance provisions do apply, the wife’s requests are mathematically impossible as she is seeking $45,549 per month in a combination of carrying charges, maintenance, child support and add ons, or approximately $546,000 per year, more than his gross income before payment of taxes and his own expenses; that the husband proposes that he pay the wife $4,000 in taxable monthly maintenance and $1,200 in monthly child support, for a total of $5,200 in direct support and $7,274 in carrying charges, all equaling $12,474 per month in pendente lite support; that, if the court utilizes the new statutory formula for calculating any award for temporary maintenance it should take into account the sums paid by the husband for the carrying charges at the marital residence; that the wife should be responsible for her own automobile expenses from the maintenance sums provided to her; that an award to the wife of $50,000 in counsel fees will serve to prolong the litigation and should be rejected.
As to summary judgment, the husband argues that, because his action for divorce is first in time, he would be entitled to a grounds trial first; that, in the event the husband does not succeed, then the wife’s motion for summary judgment could be heard; counsel for the husband suggests that the motion for summary judgment is premature and must be held in abeyance; counsel states that, if the husband prevails on grounds, then the pre-October 12, 2010 laws will govern any final award of maintenance; that if the husband is unsuccessful on grounds, then the wife’s motion for summary judgment can be renewed.
As to the cross motion, the husband alleges as follows: that, although the parties reside together in the marital residence, the wife has been taking the children to her parents’ home in Great Neck nearly every night and not returning until 10:00 *303 p.m. when the children go directly to bed; that the husband works Monday through Friday from 7:00 a.m. to 6:30 p.m. leaving little time for him to spend time with the children; that, to ensure that the husband may also spend quality time with the children, he requests that Tuesday, Wednesday and Thursday nights, from 7:30 p.m. to 10:30 p.m. be set aside for him, together with each Sunday from 12:00 p.m. to 7:00 p.m.; that the husband also requests that the wife produce the children’s passports to be held by the court during the pendency of the action.
In reply, the wife alleges as follows: that, although the husband continues to pay the carrying charges for the marital residence, he has failed to provide any direct support to the wife and has failed to contribute to the food, entertainment and various other expenses for the family; that the parties lived a comfortable upper-middle class lifestyle and her statement of net worth accurately reflects the family’s monthly expenses; that, as a full-time mother and homemaker, driving the children to and from school and to their many after school activities, she is most familiar with the costs of their various tutors, piano, tennis and fencing teachers; nor has she overstated the costs of the children’s summer camp/summer activities with their many add ons for special equipment and sleep away expenses; that the family has always belonged to a synagogue, first at Temple Israel and then at Temple Beth-El, a reformed temple, where the boys attended nursery school and later Hebrew school; that D. was removed in the 6th grade to attend Chabad Silverstein Academy of Great Neck because he was so far behind in his learning that he required special attention; when D. entered the 7th grade, the wife hired a private rabbi from North Shore Hebrew Academy to tutor him, who was instrumental in preparing the child for his Bar Mitzvah; that the wife has now returned to Temple Israel, where she was educated as a child and where the parties were married, and where both A. and D. will be enrolled in the Hebrew school; that a strong religious education is part of the husband’s background and that payment for Temple Israel should be directed; that prior to commencement of the instant action, the husband always paid the wife’s charged expenses in full, provided her with cash when needed, and she was also able to write checks from the parties’ joint checking account; that the wife is now forced to pay all of the family expenses on her credit card and, at the rate of $10,000 per month, she has reached the $20,000 credit limit; that the parties’ 90-year-old home is beautiful and stately, on one-half acre with an *304 inground swimming pool, but requires constant care and repair; that, as she has arranged in the past, the wife contracted for the home to be painted, which included extensive re-plastering of the walls and ceiling; that the cost was $15,000; that the husband initially paid $7,500 but now refuses to pay the balance of $7,500; that the parties both agreed that the repairs were necessary and the husband seeks to punish the wife by withholding full payment to the painter; that the husband has seriously understated the family’s living expenses in an attempt to minimize his support obligations.
As to the cross motion, the wife alleges as follows: that the wife does not object to a detailed parenting schedule; that the wife and children only spend two nights per week at her parents’ home — Sunday evenings from 6:00 p.m. to 9:30 p.m. and also on Mondays for dinner; that most other nights, the wife and children are at home; that the wife has no objection to the husband spending exclusive time with the children but suggests that three consecutive nights from 7:30 to 10:30 p.m. would be disruptive to the children’s busy schedules and their need to complete homework assignments; that the request for an order directing the wife to turn over the children’s passports should be denied as the husband has failed to offer any basis for this request.
As a reply on the cross motion, the husband alleges as follows: that the children do not have busy schedules between 7:30 and 10:30 p.m. and the husband can facilitate whatever activities are planned and make sure the children complete their homework and get to bed at a reasonable hour; that, despite her assertions to the contrary, the wife frequently leaves the children in the care of the nanny and is not at home to tend to their needs; that there is no reason why he, as the children’s father, should be limited in the time he spends with the children; that, with respect to the children’s passports, the husband fears that the wife will flee to Israel with the children if she does not receive the financial settlement she believes she is entitled to.
The Law and Analysis
As to Summary Judgment on Grounds
In a case of first impression, the wife’s counsel moves for partial summary judgment on the wife’s cause of action for a divorce on the ground that the relationship between the parties has been irretrievably broken for a period of at least six months (Domestic Relations Law § 170 [7]), which the husband opposes *305 on various grounds. Initially, it is without challenge that the Legislature has the power to authorize divorce unrelated to the conduct of any of the parties (“no-fault”) and to set forth the standard of proof required. As set forth hereinafter in Gleason v Gleason (26 NY2d 28 [1970]), our Court of Appeals has been called upon to comment on the failure of the Legislature to provide defenses and whether that failure somehow will allow the Court to graft on to a plainly written statute standards of proof and requirements not contained in the statute.
In 1966, the Legislature repealed this State’s ancient divorce laws that for almost 200 years permitted divorce solely for adultery, and enacted the Divorce Reform Law which, in addition to four grounds based on “fault” ([1] cruel and inhuman treatment, [2] abandonment, [3] confinement in prison for at least three years, [4] adultery), specified two “non-fault” grounds — (5) living separate and apart for a period of two years following a separation judgment or decree or (6) living separate and apart for a period of two years following the execution of a separation agreement (Gleason v Gleason, supra). Arguments as to retroactivity and impairment of implied marriage contract rights swirled about until the Gleason decision in 1970, when the Court of Appeals opined, in words still fresh today, that
“the deliberate failure of the legislators to provide defenses to the new grounds further evinces and confirms their intention of abandoning the traditional fault approach to divorce and permitting the termination of marriages even where both parties are at fault — except in cases of adultery (Domestic Relations Law § 171). In a word, if there is no longer a viable marriage, the question of fault, of ‘guilt’ or ‘innocence,’ is irrelevant.” (26 NY2d at 35.)
The newly enacted matrimonial legislation, effective October 12, 2010, provides a new no-fault ground for divorce, Domestic Relations Law § 170 (7), as follows: “The relationship between husband and wife has broken down irretrievably for a period of at least six months, provided that one party has so stated under oath.”
Marriage is the State’s recognition and approval of a man and a woman’s voluntary choice to live with each other, to remain committed to one another and to form a household based upon their own feelings about one another. It has often been said that marriage is a partnership. There can be no such thing as an *306 indissoluble partnership. (Skinner v Dayton, 19 Johns Cas 513 [1822].) Indeed, it has been held that the decision that a marriage is irretrievably broken need not be based on any objectifiable fact. It is sufficient that one or both of the parties subjectively decide that their marriage is over and there is no hope for reconciliation (Caffyn v Caffyn, 441 Mass 487, 806 NE2d 415 [2004]).
In other words, a plaintiffs self-serving declaration about his or her state of mind is all that is required for the dissolution of a marriage on the ground that it is irretrievably broken. As stated in our statute, a no-fault divorce may be granted “provided that one party has so stated under oath” that the marriage is irretrievably broken. In adopting no-fault divorce, the Legislature implicitly recognized that the parties to a marriage should be able to make personal and unavoidably subjective decisions about the continuation of their marriage partnership. The conclusion, that it is sufficient that a party subjectively decide that their marriage is over, finds support in the reasoning of other courts. (See e.g. In re Marriage of Walton, 28 Cal App 3d 108, 117, 104 Cal Rptr 472, 479 [1972], quoting In re Marriage of McKim, 6 Cal 3d 673, 680, 100 Cal Rptr 140, 144 [1972] [in deciding whether evidence supports findings “ ‘that irreconcilable differences do exist and that the marriage has broken down irremediably and should be dissolved’ ” the court must necessarily “depend to a considerable extent upon the subjective state of mind of the parties”]; Joy v Joy, 178 Conn 254, 255, 423 A2d 895, 896 [1979] [there need not be “objective guidelines” for determination that marriage is irretrievably broken]; Mattson v Mattson, 376 A2d 473, 475 [Me 1977] [“The term ‘irreconcilable marital differences’ is one that necessarily lacks precision and should not be circumscribed by a strict definition”]; Dunn v Dunn, 13 Or App 497, 501-502 n 1, 511 P2d 427, 429 n 1 [1973] [explaining necessity of a subjective standard of marital failure in context of no-fault divorce]; Caffyn v Caffyn, 441 Mass at 495 n 17, 806 NE2d at 422 n 17.)
Therefore, in this court’s view, the Legislature did not intend nor is there a defense to Domestic Relations Law § 170 (7). Suggestions that the party wishing to stay married has a constitutional right that is being infringed upon in violation of due process is unavailing. Staying married, against the wishes of the other adult who states under oath that the marriage is irretrievably broken, is not a vested right. “Marital rights . . . have always been treated as inchoate or contingent and may be taken away by legislation before they vest” (Gleason v Gleason at 40).
*307 “Nor is there substance to the further contention that the statute unconstitutionally impairs contract rights. ‘Marriage is not a contract’ . . . ‘within the meaning of the provision of the Federal Constitution which prohibits the impairment by the States of the obligation of contracts.’ This being so, ‘rights growing out of the [marriage] relationship may be modified or abolished by the Legislature without violating the provisions of the Federal of [sic] State Constitution which forbid the taking of life, liberty or property without due process of law.’ . . . ‘The provision of the constitution never has been understood to embrace other contracts, than those which respect property, or some object of value, and confer rights which may be asserted in a court of justice. It never has been understood to restrict the general right of the legislature to legislate on the subject of divorces.’ ” (Gleason v Gleason at 42 [citations omitted]; see also Coffman v Coffman, 60 AD2d 181 [2d Dept 1977].)
While this court would ordinarily grant partial summary judgment to movant, where there are no defenses and no triable issues of fact, the new legislation directs that
“[n]o judgment of divorce shall be granted under this subdivision unless and until the economic issues of equitable distribution of marital property, the payment or waiver of spousal support, the payment of child support, the payment of counsel and experts’ fees and expenses as well as the custody and visitation with the infant children of the marriage have been resolved by the parties, or determined by the court and incorporated into the judgment of divorce.” (Domestic Relations Law § 170 [7].)
The foregoing provides all due process protections and is not found in any other subdivision of Domestic Relations Law § 170, expressing an awareness by the drafters of the legislation that there is no defense to the no-fault ground while protecting the economic rights of the opposing spouse and children.
It has been the practice of this part, when deemed appropriate, to hold bifurcated trials with respect to grounds for the purpose of disposing of fault issues so, if a divorce was granted, the court could concentrate its resources on equitable distribution. If a divorce was not granted, issues of support and custody, as well as related issues, always remained before the *308 court. This was in aid of judicial economy. Yet, even in those cases where a divorce was granted, the court always held entry of judgment in abeyance pending determination of all other issues, as now set forth in detail in the new legislation. Since the new legislation directs that a judgment of divorce may not be “granted” when the cause of action is predicated on the no-fault ground until all the financial issues are complete, the court concludes that a motion for partial summary judgment cannot be granted nor can a bifurcated trial be held with respect to Domestic Relations Law § 170 (7). To continue this practice would allow fault trials on one party’s claim to advance in time against the other party’s no-fault claim. Moreover, since there is no defense to the no-fault ground, no judicial economy would be served by having a bifurcated trial on fault grounds, the only purpose of which was to determine whether a divorce would be granted in the first instance, and a divorce will be granted in this case provided the matter proceeds to its expected conclusion. Therefore, the wife’s motion for partial summary judgment is denied, and that portion of the court’s previous order, dated January 18, 2011, that directed a bifurcated trial on fault grounds is sua sponte recalled and vacated. The parties will proceed to trial after the completion of disclosure on all of their competing claims in keeping with the decision herein.
As to Temporary Maintenance
In 2010, the Legislature enacted a new subdivision to Domestic Relations Law § 236 (B) enumerated as (5-a). The newly enacted statute presumptively divides marital income in accordance with a legislative formula by which it is hoped that consistency and regularity in temporary maintenance awards in matrimonial actions will be effectuated. Such a statutory goal is intended to avoid the time consuming and overwhelming burden imposed on the courts and litigants in determining these motions by consideration of tedious, often conflicting affidavits about the lifestyle and monthly expenses of the parties. Yet, in this court’s view, the statute requires some remedial language as strict application in almost every case will not effectuate the statute’s purpose and will result in awards that are unjust and inappropriate, thus requiring consideration of the 17 factors enumerated in the statute.
In determining temporary maintenance pursuant to Domestic Relations Law § 236 (B) (5-a) (c) (1), the court’s analysis begins with the formula method which yields the presumptively correct amount of temporary maintenance, as follows:
*309 [[Image here]]
*310 [[Image here]]
Income Exceeds $500,000: If the payor’s income exceeds $500,000, the court considers 19 factors set forth in Domestic Relations Law § 236 (B) (5-a) (c) (2) (a) in determining any additional award of temporary maintenance. See following page for a list of these factors.
Adjustment of Award: The court may adjust the award if it finds the award is unjust or inappropriate based on consideration of 17 factors set forth in Domestic Relations Law § 236 (B) (5-a) (e) (1). See following pages for a list of these factors.
For Income Exceeding $500,000: The court shall determine any additional guideline amount of temporary maintenance through consideration of the following factors:
1. The length of the marriage;
2. The substantial differences in the incomes of the parties;
3. The standard of living of the parties established during the marriage;
4. The age and health of the parties;
5. The present and future earning capacity of the parties;
6. The need of one party to incur education or training expenses;
7. The wasteful dissipation of marital property;
8. The transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;
9. The existence and duration of a premarital joint household or a predivorce separate household;
10. Acts by one party against another that have inhibited or continue to inhibit a party’s earning capacity or ability to obtain meaningful employment. Such acts include but are not limited to acts of domestic violence as provided in section 459-a of the Social Services Law;
11. The availability and cost of medical insurance for the parties;
12. The care of the children or stepchildren, disabled adult children or stepchildren, elderly parents or in-laws that has in *311 hibited or continues to inhibit a party’s earning capacity or ability to obtain meaningful employment;
13. The inability of one party to obtain meaningful employment due to age or absence from the work force;
14. The need to pay for exceptional additional expenses for the child or children, including, but not limited to, schooling, day care and medical treatment;
15. The tax consequence to each party;
16. Marital property subject to distribution pursuant to subdivision five of this part;
17. The reduced or lost earning capacity of the party seeking temporary maintenance as a result of having foregone or delayed education, training, employment or career opportunities during the marriage;
18. The contributions and services of the party seeking temporary maintenance as a spouse, parent, wage earner and homemaker and to the career or career potential of the other party; and
19. Any other factor which the court shall expressly find to be just and proper.
Adjustment of Award: The court may adjust an award it finds to be unjust or inappropriate based on consideration of the following factors:
1. The standard of living of the parties established during the marriage;
2. The age and health of the parties;
3. The earning capacity of the parties;
4. The need of one party to incur education or training expenses;
5. The wasteful dissipation of marital property;
6. The transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;
7. The existence and duration of a premarital joint household or a predivorce separate household;
8. Acts by one party against another that have inhibited or continue to inhibit a party’s earning capacity or ability to obtain meaningful employments. Such acts include but are not limited to acts of domestic violence as provided in section 459-a of the Social Services Law;
9. The availability and cost of medical insurance for the parties;
*312 10. The care of the children or stepchildren, disabled adult children or stepchildren, elderly parents or in-laws that has inhibited or continues to inhibit a party’s earning capacity or ability to obtain meaningful employment;
11. The inability of one party to obtain meaningful employment due to age or absence from the work force;
12. The need to pay for exceptional additional expenses for the child or children, including, but not limited to, schooling, day care and medical treatment;
13. The tax consequence to each party;
14. Marital property subject to distribution pursuant to subdivision five of this part;
15. The reduced or lost earning capacity of the party seeking temporary maintenance as a result of having foregone or delayed education, training, employment or career opportunities during the marriage;
16. The contributions and services of the party seeking temporary maintenance as a spouse, parent, wage earner and homemaker and to the career or career potential of the other party; and
17. Any other factor which the court shall expressly find to be just and proper.
In the case at bar, the income of the payor exceeds $500,000 by $29,857.
The court notes that in determining the appropriate amount of temporary maintenance, the statute gives no consideration to the payment of carrying charges at the marital residence. In the case at bar, the husband is paying for all of the “billed expenses” at the marital residence which he claims amount to $7,274 per month ($87,288 per year), which includes real estate taxes, gas, electric, telephone including cell, water, homeowner’s, automobile, umbrella, medical and disability insurance, cable TV and Internet, alarm, domestic help, gardening and landscaping, snow removal, sanitation and exterminating. These payments have been “so-ordered” by the court in the preliminary conference stipulation of the parties. As such, in this instance, after consideration of the statutory factors, the blind application of the mathematical formula for temporary maintenance is unjust and inappropriate as the sums paid for carrying charges are no longer available as a maintenance source. A recomputation of the statute after deduction for carrying charges from the payor’s income, as set forth by the husband, results in the following:
*313 [[Image here]]
*314 [[Image here]]
For Income Exceeding $500,000: There is no income exceeding $500,000.
It is the court’s view that, in keeping with the mandate of the statute, but limiting its reach to only disposable income, the formula yields a presumptively correct amount. Therefore, the court directs an award of temporary maintenance in the sum of $10,922.29 per month ($131,067.50 per year), commencing April 1, 2011 and monthly thereafter. The court notes that the husband has almost $311,500 remaining after payment of carrying charges and temporary maintenance from which to pay temporary child support and add ons, unreimbursed medical expenses and taxes on his earnings. Moreover, maintenance is a tax deduction to the husband and is includable as income to the wife.
Child Support
The court directs temporary child support of $3,000 per month ($36,000 per year) to the wife, for the support of the parties’ three children, as and for the husband’s share of the children’s reasonable monthly needs for food, clothing, transportation, school supplies, laundry, recreation and miscellaneous. In determining temporary child support awards, the court, in its discretion, may apply the CSSA standards and guidelines, but it is not required to do so (Rubin v Della Salla, 78 AD3d 504 [1st Dept 2010]). It is the judgment of the court, based upon the reasonable expenses of the children and the parties’ respective incomes after consideration of the temporary maintenance award directed herein, that temporary child support of $3,000 per month for all of the three children is appropriate. With respect to educational costs, tutoring expenses, Temple Israel Hebrew School expenses, summer camp, summer activities and extracurricular activities of the children, the parties are directed to share said costs, with the husband paying 60% and the wife paying 40% commencing April 1, 2011.
2008 Mercedes Benz R-350
The wife is awarded exclusive use of the automobile she currently uses and she will be responsible for the costs of same *315 including loan payments, gas and oil, car maintenance and repairs and inspection and registration fees. The husband shall continue paying insurance for said automobile as agreed to in the so-ordered preliminary conference stipulation.
As to Counsel Fees
The wife is awarded an interim counsel fee in the sum of $25,000, payable within 30 days after service of a copy of this order, with leave to apply to the trial court for additional sums if warranted (see Domestic Relations Law § 237; Prichep v Prichep, 52 AD3d 61 [2d Dept 2008]; Kesten v Kesten, 234 AD2d 427 [2d Dept 1996]). On reaching its decision, the court has considered the parties’ income, assets and liabilities, as contained in their respective statements of net worth. The court has also considered the nature and complexity of this case and has reviewed the retainer statement, the fees billed and legal services rendered and the expertise of the wife’s attorney.
On the Cross Motion — A Parental Access Schedule
The husband’s cross motion for a parenting access schedule is granted to the extent that he shall have exclusive parenting time with the children on Tuesday and Thursday evenings from 7:30 p.m. to 10:30 p.m. and the first three Sundays of each month from 10:00 a.m. to 6:00 p.m. The wife is therefore granted one full weekend with the children on the last weekend of each month. The husband shall facilitate whatever activities are planned for the children and make sure that they complete their homework and get to bed at a reasonable hour. In the event the parties are unable to resolve interim parental access, they can be referred to parental access mediation with Marisa Alleyn, who can be reached at xxx-xxxx. The father’s request that the wife deposit the children’s passports with the court is denied; however, neither party shall remove the children from the State of New York without the written consent of the other or the prior approval of the court.
Based on the foregoing, it is hereby ordered, that the wife’s motion for partial summary judgment is denied; and it is further ordered, that the bifurcated trial on grounds, presently scheduled for April 19, 2011, is sua sponte recalled and vacated; and it is further ordered, that the preliminary conference so-ordered stipulation, dated January 12, 2011, is continued and shall remain in full force and effect. Pursuant to said order, the husband shall continue to pay the carrying charges on the marital residence, shall continue to maintain health insurance for the entire family and to pay all uncovered expenses provided *316 the wife uses in network providers (except for the elective cosmetic procedures of the wife for which she shall pay) and shall continue to maintain the existing life insurance policy with a face value of $500,000; and it is further ordered, that, commencing April 1, 2011, the husband shall pay the wife $10,922.29 per month ($131,067.50 per year) for temporary maintenance, which shall be taxable to the wife and deductible by the husband; and it is further ordered, that, commencing April 1, 2011, the husband shall pay the wife $3,000 per month ($36,000 per year), as the husband’s share of the children’s reasonable monthly needs for food, clothing, transportation, school supplies, laundry, recreation and miscellaneous; and it is further ordered, that commencing April 1, 2011, the parties shall share the educational costs, tutoring expenses, Temple Israel Hebrew School expenses, summer camp, summer activities and extracurricular activities of the children, with the husband paying 60% and the wife paying 40%; and it is further ordered, that the wife is awarded exclusive use of the automobile she currently uses and she will be responsible for paying the costs of same including loan payments, gas and oil, car maintenance and repairs and inspection and registration fees; and it is further ordered, that all monetary obligations imposed herein are retroactive to the date of service of the wife’s application, December 8, 2010 (see Domestic Relations Law § 236 [B]; Selznick v Selznick, 251 AD2d 489 [2d Dept 1998]; Banks v Banks, 148 AD2d 407 [2d Dept 1989]). Any retroactive amounts accrued between December 8, 2010 and March 31, 2011 shall be paid in one lump sum within 30 days from service of a copy of this order with notice of entry. Each party is entitled to a credit for sums voluntarily paid directly to the other spouse or to a third party for the period between December 8, 2010 and March 31, 2011, for which he or she has cancelled checks or other similar proof of payment (see Pascale v Pascale, 226 AD2d 439 [2d Dept 1996]). Payment of temporary maintenance and child support shall be direct to the wife until such time as an income execution is implemented by the Support Collection Unit upon the request of either party; and it is further ordered, that within 30 days from service upon him of a copy of this order, the husband is directed to pay the outstanding bill in the sum of $7,500 to the contractor who painted and repaired the marital residence; and it is further ordered, that the wife is awarded an interim counsel fee in the sum of $25,000, payable directly to the wife’s attorney within 30 days after service of a copy of this order, *317 with leave to request additional fees pursuant to statute; and it is further ordered, that the husband’s cross motion for a parenting access schedule is granted to the extent that he shall have exclusive parenting time with the children on Tuesday and Thursday evenings from 7:30 to 10:30 p.m. and the first three Sundays of each month from 10:00 a.m. to 6:00 p.m. The wife is therefore granted one full weekend with the children on the last weekend of each month; and it is further ordered, that the husband’s request that the wife deposit the children’s passports with the court is denied; however, neither party shall remove the children from the State of New York without the written consent of the other parent or the prior approval of the court.
All further requested relief not specifically granted is denied.